*Fairfield,*
June, 1849.

Northrop
*v*
Graves.

——

### The town of READING *against* The town of WESTPORT.

The word, *belongs,* when used in a statute in reference to the poor, designates the place of *legal settlement* of the persons referred to.

The residence in a town requisite to gain a settlement therein, by commorancy, is an actual residence for the full term of six years successively, without which a mere domicil is insufficient.

The period of a person's imprisonment for crime, does not constitute any portion of the successive residence requisite to his acquisition of a legal settlement by commorancy.

(*a*) The Chief Justice, by whom the jury had been instructed, probably had not changed his opinion on this point.

*Fairfield,*
June, 1849.

Reading
*v.*
Westport.

THIS was an action of *assumpsit,* to recover certain sums of money expended by the plaintiffs for the support of *Laura Barlow,* the wife, and of *Josiah Barlow* and *Sally Barlow,* the children, of *Samuel Barlow,* alleged to be settled inhabitants of the town of *Westport,* residing in *Reading,* being destitute of property, and reduced by sickness to want and distress.

The cause was tried, on the general issue, at *Danbury, October* term, 1848 ; when the court, upon the claims of the parties respectively, (*a*) charged the jury, That in order to acquire a settlement in any town in this state, by commorancy, there must be a continuous residence of six full years, not interrupted, during such period, by a residence in any other town ; that if *Samuel Barlow* was a resident in *Greensfarms,* when he was committed to *Newgate* prison, or when he was committed to the state's prison, his confinement in such prisons would not operate to interrupt his continuous residence in *Greensfarms ;* but that the periods of his confinement would not be computed as constituting any portion of a six years' residence in *Greensfarms :* that if he had continued to reside, for the period of six years, in *Greensfarms,* but had not so resided without becoming chargeable to the town of *Fairfield,* [within which the parish of *Greensfarms* was situated,] he had not acquired a settlement in that town, by commorancy.

The jury returned a verdict for the defendants ; and the plaintiffs moved for a new trial for a misdirection.

*Dutton* and *Loomis,* in support of the motion, contended, 1. That the time *Barlow* was confined in prison, should be computed as residence in *Greensfarms,* by virtue of which he could gain a settlement. Constructive residence cannot affect the question of domicil. *Sto. Confl.* §41. 44. 47. 1 *Kent's Com.* 76, 7. *Marsh* v. *Hutchinson,* 2 *Bos. & Pul.* 226. *Oxford* v. *Bethany,* 15 *Conn. R.* 246. 252. *Bethany* v. *Oxford. Id.* 550. 584. *Grant* v. *Dalliber,* 11 *Conn. R.* 234. *Waterbury* v. *Bethany,* 18 *Conn. R.* 424.

2. That the resolution of the General Assembly of 1842, annexing *Greensfarms* to *Westport,* made *Barlow* a settled

(*a*) As the facts in the case are stated, with sufficient particularity, in the opinion of the court, they are omitted here.

inhabitant of *Westport*. The proper construction of the 3rd section of this resolution, is, that all the poor of the town of *Fairfield*, residing, at the time of the annexation, in *Greensfarms*, whose last residence was in said *Greensfarms*, should be settled inhabitants of *Westport*. Any other construction would render the provision unnecessary and absurd. *Waterbury* v. *Bethany*, 18 *Conn. R.* 424.

*Fairfield,*
*June, 1849.*

Reading
*v.*
Westport.

*Swift* and *Hawley*, contra, contended, 1. That the terms " any inhabitant," in the statute relating to settlement by commorancy, are limited to persons *sui juris*, and do not embrace those who are deprived of the right of personal liberty; consequently, prisoners confined in the state's prison for crimes, are not within the meaning of the statute. *Huntington* v. *Oxford*, 4 *Day*, 189. *Colchester* v. *Lyme*, 13 *Conn. R.* 274. *Adams* v. *Wiscasset*, 5 *Mass. R.* 328. *Barlow*, therefore, being confined in state's prison, and deprived of his liberty, could not, while there, be considered as residing in *Greensfarms*, and by such residence gaining a settlement.

2. That the resolve of annexation, with the finding of the jury, that *Barlow's* last residence in *Fairfield*, was in *Greensfarms*, did not confer on him a settlement in *Westport*. The 3rd section of the resolve contains nothing more than the common law of this state on the subject. The term " belong," in that section, means, *has a legal settlement*, and is uniformly so used in all public and private statutes relating to the settlement of paupers, and in no other sense. *Stat.* 360, 1, 3, 4, 5, 8. (ed. 1838.) *Priv. Stat.* 1131. 1135. 1137. 1143. 1147. 1155. 1169. 1182. 1194. *Columbia* v. *William*, 3 *Conn. R.* 467. *Waterbury* v. *Bethany*, 18 *Conn. R.* 43 .

CHURCH, Ch. J. The result of this case must depend upon fixing correctly the place of *Samuel Barlow's* settlement, when the supplies were furnished for which the action was brought. His settlement determines that of the paupers in question.

The birth-place of *Samuel Barlow* was *Fairfield;* from thence he removed to *Reading*, married there and had children; and in the year 1820, he abandoned his wife and family in *Reading*, and went to reside in the parish of *Greens-*

*farms,* then a part of the old town of *Fairfield,* since annexed to *Westport.* In *Greensfarms, Barlow* was unlawfully married to *Lucy Mills,* and he continued to cohabit with her there, about two years, when he was committed to *Newgate* prison, for bigamy, and was confined there, under sentence for two years ; then he returned again to *Greensfarms,* and resided there for about five years, and was committed to the state's prison for arson, and continued there under sentence for seven years ; his lawful wife and family, all this time, remaining in *Reading.* The defendants claimed, that he had not resided within the limits of *Greensfarms,* long enough, at any one time, to acquire a legal settlement there, and that he had not supported his lawful wife and family, during his residence there.

The parish of *Greensfarms,* was annexed to the town of *Westport,* in the year 1842, by a resolution of the general assembly, a part of which is as follows : " Resolved, that the poor of said town of *Fairfield, within the limits* hereby annexed to *Westport,* shall be deemed inhabitants of the said town of *Westport,* and maintained accordingly ; and said town of *Westport* shall be liable to maintain all the poor of the town of *Fairfield,* that are or may now be absent therefrom, provided such poor *now belong* to the parish of *Greensfarms,* as aforesaid." When this resolution was passed, *Barlow* was residing in the town of *Norwalk.* Therefore, if *he belonged* to the parish of *Greensfarms* then, he and the paupers in question, became chargeable to the town of *Westport,* as the plaintiffs claim.

The word, *belongs,* when used in our public and private statutes, and especially when used in reference to inhabitancy, the poor, &c., has been uniformly understood and construed to designate the place of a person's legal settlement, and not merely his place of residence. This has been both its legislative and its judicial meaning. *Columbia* v. *Williams,* 3 *Conn. R.* 467. *Waterbury* v. *Bethany,* 18 *Conn. R.* 425. *Rev. Stat.* 535, 6. *Priv. Stat.* 1131. 1135. 1137. &c.

The question, therefore, comes to this—was the parish of *Greensfarms* the place of *Barlow's* legal settlement ; or did he *belong* there, when that parish was annexed to *Westport?* If he did not, the defendants are not chargeable with the support of these paupers. It becomes important to ascer-

*Fairfield,*
June, 1849.

Reading
*v.*
Westport.

tain the legal effect of his confinement in the prisons, upon his residence.

To acquire a settlement in a town by commorancy, the party must reside there for the *full term* of six years successively. *Rev. Stat.* 533. This is not, therefore, a question of domicil, as the plaintiffs contended, but a question of actual residence. Length of time is not necessary to acquire a domicil; but length of residence is necessary to acquire a settlement. 1 *Sto. Confl.* 42. If *Barlow* had not acquired a settlement in *Greensfarms*, before he entered upon his seven years' term of imprisonment in the state's prison, he did not acquire it, by his stay in the prison. While absent from *Greensfarms*, and confined in prison under his sentence, he was not helping out his five years' residence in *Greensfarms*, and continuing it, and extending it out into a six years' residence, so as to acquire a settlement by commorancy in *Greensfarms;* especially, as he left no family there to represent himself, or continue his home.

The statute gives authority to towns to break up the residence of paupers, so as to prevent the acquisition of a settlement by them, by removing them to the towns where they belong; but this man could not have been removed, nor his continuing residence disturbed. Indeed, he could not remove himself, nor change his residence, if thus disposed; but his residence must go on, and result in a legal settlement, in spite both of the town and himself, if the claim of the plaintiffs, in this respect, is sustained. And, if *Barlow* had not been committed to prison, *non constat* that he would have prolonged his residence in *Greensfarms* to six years. It is very clear, we think, that the statute did not intend the period of imprisonment for crime, to constitute any portion of successive residence, so as to acquire a legal settlement.

This case is unlike that of *Grant* v. *Dalliber*, 11 *Conn. R.* 234. The questions there were, where was the home or domicil of *Dalliber*, before he was committed to prison; and had he lost it? And not whether he was acquiring a home, or other privilege, by his imprisonment.

We do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.