## Town of Salem *vs.* Town of Lyme.

The residence intended by the 6th section of the statute with regard to paupers, which provides that a person may gain a settlement by a residence in a town "for the full term of six years successively," is a fixed and permanent residence, as distinguished from one that is merely transient or temporary.

Such a residence is not interrupted by an absence for a temporary purpose, with the intention, when the object of the absence is accomplished, to return to the place of the residence as a home.

Where a person without a family had his home with his father, in a certain town, for the period of six years, but during the time was absent at work in another town, for different periods, amounting in all to three years, and was also absent at one time for fifteen months on a whaling voyage, but had never been absent with the intention of remaining permanently, and always returned to his father's house as his home, it was held that his residence in the town was not interrupted by the absences.

ASSUMPSIT, for supplies furnished to paupers claimed to belong to the defendant town.

Upon the trial to the jury, it became a material inquiry whether John D. Clark, one of the paupers, had acquired a settlement for himself in the town of Lyme, by commorancy therein. It was agreed that he became twenty-one years old on the 12th of April, 1825, and continued unmarried and without any family of his own until 1833. The plaintiffs claimed that his established residence and home, from the autumn of 1820 until his marriage in 1833, was at all times at his father's house, in Lyme, (his father residing, but not having a settlement there,) and that during all that period he had no other residence or home. The defendants claimed, that after he became twenty-one years of age he worked for sundry persons in Lyme for different periods of time, amounting in all to about eighteen months; that he then went into the neighboring town of Waterford, and worked for sundry persons there for different periods of time, amounting in all to about three years; and that he then went to sea, on a whaling voyage from the port of New London, and was absent about fifteen months; and that, during the times he so worked in Lyme and Waterford, he resided and had his home for the time being, at the houses of his respective employers, and not at the residence of his father. The plaintiffs claimed that during all the time he continued to make his father's house his home, and to return to it from time to time as to his home, and in all respects to consider and treat it as such, until his marriage, and that he had no other home. The parties introduced evidence in support of their respective claims.

In reference to these claims, the court charged the jury, that in order to gain a settlement in a town by commorancy under the statute, a person must have resided therein constantly and continuously for the full period of six years, but that if he had an established residence therein for that period, his temporary absence therefrom, for a temporary object, either of business or pleasure, if he intended to return, and did in fact return there, as to his home, when that object was accomplished, would not interrupt the continuous residence necessary to gain a settlement; that a residence and home once gained and established, was presumed to continue until the

acquisition of another was shown, and was not lost until another was gained ; and that, if the jury should find that the pauper, at the time he became twenty-one years of age, and at the time he first went to Waterford, had his established residence and home at his father's house in Lyme, the fact of his working in Waterford for different persons for three years in the whole, would not interrupt the legal continuity of his residence at his father's house, if during that period he continued to return to his father's house from time to time as to his home, and to consider and treat that as his home ; and that such continuity of residence in Lyme would not be legally interrupted by his absence on the whaling voyage, if at the time he sailed his established home was at his father's house, and it was his intention to return to it upon his return from the voyage, and he did in fact return to it as to his home upon the termination of the voyage.

The jury returned a verdict for the plaintiffs, and the defendants moved for a new trial for error in the charge of the court.

*Willey* and *Brandegee*, in support of the motion.

1. The term "*reside*," as used in our statute of settlements, means the *actual abiding* or dwelling in a given place, and is a fact dependent upon the act of the party, as distinguished from domicil, which is a question of law, dependent partly upon fact and partly upon the intention of the party. Webster's Dictionary, "Reside," "Domicil." The etymology of the words indicates this. Reside comes from *resideo*, which means *to seat one's self*. Domicil, from *domus*, a *house*. *Reading* v. *Westport*, 19 Conn., 565. *Andrews* v. *Herriott*, 4 Cowen, 517, *note*. *Foster* v. *Hall*, 4 Humph., 346. *Middlebury* v. *Waltham*, 6 Verm., 202. *Jamaica* v. *Townshend*, 19 id., 270. The inquiry before the jury was as to the residence (in the statute sense of the term) of the pauper, for the full term of six years successively, which was necessary to give him a settlement by commorancy. The question therefore was one of residence, and of residence alone. The charge of the judge led the jury away from the true point of inquiry, and con-

founded the idea of residence with that of domicil. The judge also wholly omitted to charge at all as to what did or did not constitute a residence within the meaning of the statute, or even to leave that question to the jury as a question of *fact*, and manifestly erred in charging that a residence once established in Lyme would not, for purposes of settlement, be interrupted by successive and continuous absences for *four and a half years*, if there was an intention to return, and an actual return at the expiration of that time to Lyme as to his home. Such intention would be important in determining the question of *domicil*, but would not necessarily determine the fact of *residence*, and yet the jury might well conclude, from the prominence given to it in the charge, that it was decisive upon that question. Such a long continued absence could hardly be called a " temporary absence for a temporary purpose." *New Milford* v. *Sherman*, 21 Conn., 101. The doctrine of the charge is the doctrine of *constructive residence*. Therein it is opposed to the statute, which requires *full actual residence*. Such a construction of the statute defeats entirely one of its most important provisions, that a town may prevent the acquisition of a settlement by the pauper by *removing him from the town*. If he may acquire a settlement by six years constructive residence, while actually absent, the town will have no opportunity to exercise this power. This is not only a consideration against giving such a construction to the statute, even if it will admit of it, but shows very clearly that the residence which the statute intends is an actual one, and not a mere domicil.

*Hovey* and *Pratt*, contra.

The residence of the pauper at his father's house in the town of Lyme, was not lost or interrupted by his temporary absence at work in Waterford, or by his voyage at sea. The residence of a person being once established, is deemed to continue until proved to have been actually changed, and is not lost until another is gained. *Brewer* v. *Linnaeus*, 36 Maine, 428. *Cadwalader* v. *Howell*, 3 Harr., 138. *Abington* v. *N. Bridgewater*, 23 Pick., 110. *Crawford* v. *Wilson*,

4 Barb., 505. *Nixon* v. *Palmer*, 10 id., 175. *Kilburn* v. *Bennett*, 3 Met., 199. A change or loss of residence is not proved by temporary absences therefrom for special purposes, attended with an *animus revertendi*, especially when the intention to return is carried into effect as soon as such purposes have been accomplished. Nor do such absences interrupt the continuous residence necessary by our law to gain a settlement. *New Milford* v. *Sherman*, 21 Conn., 101. *Abington* v. *Boston*, 4 Mass., 312. *Commonwealth* v. *Walker*, id., 556. *Granby* v. *Amherst*, 7 id., 1. *Jennison* v. *Hapgood*, 10 Pick., 79. *Thorndike* v. *City of Boston*, 1 Met., 242. *Sears* v. *City of Boston*, id., 250. *Knox* v. *Waldoborough*, 3 Greenl., 455. *Richmond* v. *Vassalborough*, 5 id., 396. *Waterborough* v. *Newfield*, 8 id., 203. *Wilton* v. *Falmouth*, 15 Maine, 479. *Wayne* v. *Green*, 21 id., 357. *Kennebunkport* v. *Buxton*, 26 id., 68. *Brewer* v. *Linnaeus*, 36 id., 428. *Warren* v. *Thomaston*, 43 id., 406. *Crawford* v. *Wilson*, 4 Barb., 504. *Cadwalader* v. *Howell*, 3 Harr., 138.

HINMAN, J. This case depends upon the construction which should be given to the 6th section of the act providing for the support of paupers, (Rev. Stat., tit. 42,) in respect to the meaning of that part of the section which provides that any inhabitant of any town in the state shall gain a settlement in the town to which he may have removed, " if he shall reside in such town for the full term of six years, successively, after his removal into such town, and shall, during the whole of said time, have supported himself and his family, if any he have, without his or their becoming chargeable to such town, or to the town that may by law be liable for the support of such person or family." The question was, whether John D. Clark, one of the paupers, had acquired a settlement by commorancy in Lyme. His father's residence was there, and the plaintiffs claimed that his established residence was at his father's house, from the autumn of 1820 until his marriage in 1833, during which time they claimed that he acquired a settlement there for himself. During this period he had in fact been absent, at different times, for a period of three years or more in all,

laboring for different persons in the adjoining town of Water-
ford, and he had also been at sea on a whaling voyage from
the port of New London, which the defendants claimed inter-
rupted the continuity of his residence in Lyme, while the plain-
tiffs insisted that his residence there continued, notwithstand-
ing these absences, as he, during all this time, continued to
treat his father's house as his home, to which, as such home,
he from time to time returned. The charge of the court to
the jury on these conflicting claims is the subject of this motion.
It recognized the doctrine that, if the pauper had his established
residence and home at his father's when he became twenty-
one, and continued to consider and treat it as his home and
place of residence during these absences therefrom, and from
time to time returned to it as to his home, the fact of his work-
ing for different persons in Waterford for three years in the
whole, did not interrupt the legal continuity of his residence
at his father's house, and that such continuity of residence was
not interrupted by his voyage at sea, provided his established
home was at his father's, and it was his intention to return to
it on his return from sea, and he in fact did return to it as
his home at the termination of the voyage.

The defendants' counsel, in controverting the legal correct-
ness of the charge, have, we think, taken an erroneous view of
the distinction between the actual residence of a party and the
place of his domicil. It is true, there is a wide difference be-
tween domicil and mere residence. Of course they may be,
and usually are, at the same place, and it is quite obvious
that they may be at different places. But domicil is but the
established, fixed, permanent, and may therefore be said to
be the ordinary, dwelling place or place of residence of a party,
as distinguished from his temporary and transient though
actual place of residence. One is his legal residence as dis-
tinguished from his temporary place of abode ; or, to use the
language of the charge, one is his home, as distinguished from
the place or places to which business or pleasure may tem-
porarily call him. Now, when the statute speaks of a resi-
dence which, if continued six years, will establish the settle-
ment of a person, it must mean a permanent, fixed residence,

and not one which is temporary merely ; since, otherwise, an absence from it of ever so short duration, and for an object wholly transient in its nature, would effectually interrupt it by the commencement of a residence in another place, it being wholly incompatible that two residences under this statute should exist in the same person at the same time. No one would claim that a strictly and absolutely continuous residence is required by the statute. But, if not, what other rule can there be than that the residence must be the fixed, permanent, established residence or home, as distinguished from that which is transient merely. It was said that, under the statute, there could be no such thing as a constructive residence. But if we are correct in what has been said, it follows that one's legal residence may be in one town and his actual residence in another, in which case we suppose his legal residence would be but a residence given him by construction of law, in consequence of his having had his residence in fact there for an indefinite period and his having no intention to change it. When a domicil is once acquired by a residence for an indefinite time, with an intention to continue the residence indefinitely, the statute applies to the case. The residence which the statute contemplates as sufficient to gain a settlement, if it is continued for six years, has commenced. Now no one would claim that an absence from it, for a temporary purpose, of a day, or a week, or a month, or even of several months, would interrupt it. And if no precise period can be fixed which will in law amount to an interruption of it, what other rule can be adopted than that there must be such a change of residence for an indefinite time as will amount to a change of domicil ? This presents a clear and definite rule, free from all difficulty in its application, except such as is common to all rules—the difficulty of determining the precise state of the facts. When it is once found that an absence from such a fixed residence was for a temporary object merely, with an intention not to abandon it, but to return to it, as to a home or domicil, when the object of the absence should be accomplished, it can make no difference whether the absence is for a longer or shorter period, so long as it is for such a period only as will

Town of Salem *v.* Town of Lyme.

not, of itself alone, be conclusive evidence of an absence really intended to be permanent; which will usually depend very much on a variety of other circumstances accompanying the absence.    The fact, therefore, that the pauper in question had worked in Waterford, at different times, for periods amounting in all to about three years, was only important as evidence merely of an intention to remain there indefinitely ; and this, of course, was for the jury, before whom the defendants had all the benefit of it to which they were entitled.

The charge in this case followed the charge in the somewhat similar case of *New Milford* v. *Sherman*, 21 Conn., 101, as nearly as the circumstances of the two cases would allow, and that charge was not, in this respect, complained of by the learned counsel engaged in the case.    In substance, it is all resolved into the proposition, that the legislature intended, by the word "*reside*," as used in the statute, a fixed, permanent and established residence, as distinguished from a residence which is merely transient or temporary ; and that such a permanent and established residence is not interrupted by an absence from it which is merely temporary in its character. We can not feel that there can be any doubt upon the question.    The principles of the charge will be found to be fully sustained in the numerous cases cited by the plaintiffs' counsel in support of it.    We do not therefore advise a new trial.

In this opinion STORRS, C. J., concurred.    SANFORD, J., having tried the case in the court below, did not sit.

New trial not advised.