INHABITANTS OF SEARSMONT *vs.* INHABITANTS OF THORNDIKE.

Waldo.    Opinion November 16, 1885.

*Pauper.    Settlement.    Emancipation.    Continued residence.*

That a minor daughter should depart from home for temporary employment, leaving such articles of clothing and bedding as she did not require for use, even though she receive the wages for her labor for her own use, is not so uncommon an occurrence as to authorize an inference of such a change in the parental and filial ties as to constitute emancipation.

When the home of a person is once established in a town it requires less proof to show continuance there than would be necessary to show both the establishment and continuance.    Bodily presence at all times is not necessary to show continuance.    The departure for a purpose in its nature temporary, leaving behind articles not required for immediate use, expressing an intention to return, and returning to visit, and to repair wardrobe, and on account of sickness are sufficient evidence of the continuance.

ON REPORT.

Assumpsit for pauper supplies to the amount of twenty-seven dollars furnished Sybil Ryan whose settlement was alleged to be in the defendant town.

The opinion states the material facts.

*Wm. H. Fogler* and *R. F. Dunton*, for the plaintiffs, cited: *Sumner* v. *Sebec*, 3 Maine, 223 ; *Lowell* v. *Newport*, 66 Maine, 78 ; *Parsonsfield* v. *Kennebunkport*, 4 Maine, 47 ; *Knox* v. *Waldoboro*, 3 Maine, 455 ; *Fayette* v. *Livermore*, 62 Maine, 229 ; *Brewer* v. *Linnœus*, 36 Maine, 428 ; *Chicopee* v. *Whately*, 6 Allen, 509 ; *Ripley* v. *Hebron*, 60 Maine, 395.

*Brown and Carver* and *George E. Johnson*, for the defendants.

When the pauper went to Massachusetts in 1866 or 1867 her father surrendered all right to the care and custody of her, and never afterwards claimed any of her earnings, nor attempted to control her conduct in any manner; in fact he relinquished all his parental rights and authority over her and from that time treated her the same as though she was of full age, which makes a clear case of emancipation under *West Gardiner* v. *Manchester*, 72 Maine, 509; *Lowell* v. *Newport*, 66 Maine, 78.

October 23, 1870, the pauper was twenty-one years old, and whether emancipated or not, her settlement was in Waldo, as her father had not acquired one since he moved from that town. R. S., c. 24, § 1, p. 2.

To establish a settlement in Thorndike plaintiffs must prove that subsequent to October 23, 1870, and prior to November 6, 1883, the pauper resided in Thorndike five years in succession. R. S., c. 24, § 1, p. vi. The law does not allow any of the years of his (pauper's) residence while under age to be tacked to those after age, to make up the requisite number. *No. Yarmouth* v. *Portland*, 73 Maine, 110–111; *Brooksville* v. *Bucksport*, 73 Maine, 111.

To establish a residence within the meaning of the statute, there must be personal presence, with the design, and the right, on the part of the pauper, to make her father's house her home, coupled with his consent. *Corinth* v. *Lincoln*, 34 Maine, 314; *Warren* v. *Thomaston*, 43 Maine, 418; *Fayette* v. *Livermore*, 62 Maine, 229; *North Yarmouth* v. *West Gardner*, 58 Maine, pp. 211, 212, 215.

Neither the pauper, her father, nor Mrs. Ryan, considered or understood that pauper's home was in Thorndike from the time he moved to Thorndike, in 1869, till after her return, in July, 1879.

When the pauper went away in 1872 or 1873, she left no property in Thorndike "except some few little things that she gave" her step-mother. At that time, Mrs. Ryan testifies, "I asked her to come and see us again; and she said she would."

Daniel C. Ryan, pauper's father, in his answer to question, "I told her I should buy a farm in a year or two, and when I

did she could come home." This he told her when she went away in 1877 or 1878, and is equivalent to saying, you have no home here and we don't want you to come home again till after I buy a farm; not what a father would have said to an invalid daughter, if his house was her home.

In *Corinth* v. *Lincoln, supra,* the court says : " In order to constitute a settlement in the town by a residence of five years together, it must appear that she had her home at her father's house. . . . Home, when restricted to the house of a person's residence, must be the place where he has the design and the right for the time being, to abide, connected with actual residence. This necessarily involves the idea of a voluntary intention to occupy the place on the part of the inmate and a voluntary consent to that occupation, on the part of the one who has the control."

DANFORTH, J. An action to recover for supplies furnished a pauper, and the only question raised is whether the pauper had a settlement in the defendant town. The case is before the court upon a report. The witnesses are the father and stepmother of the pauper, and though there are some verbal differences in their statements of the facts, there is no real conflict in their testimony.

It appears that the father had lived in the town of Waldo for fifty years previous to 1869, when he removed to the defendant town and remained there until 1879, and then moved with his family into the plaintiff town where he has ever since remained.

The daughter, who is the pauper, lived with her father in Waldo until 1867 when she was eighteen years old. She then went to Massachusetts for employment to earn something for herself, saying she should return in two or three years, leaving behind her some articles of apparel and bedding, being all the goods she had except what she took with her for use while she was absent. She did return but not until after her majority. So far as appears, after she left and while she was a minor, the father received none of her earnings, nor did he contribute anything to her support, but it does appear that he provided her with clothing to take with her.

Under these circumstances it is claimed that the daughter was emancipated and no longer followed, or had her home with her father. But we fail to see any evidence which tends to such an inference. That a daughter should leave home for temporary employment, even though she might receive the proceeds for her own use, is not so uncommon an occurrence as to authorize an inference of any change in the parental and filial ties. It is the father alone who can emancipate the child. Here is no relinquishment on his part of the right of control over, or repudiation of his parental obligations to the child; simply an assent to a particular course of life on her part for the time being. Nothing inconsistent with his right to recall her, or claim her earnings at any time in the future. Hence there is an entire failure to sustain an emancipation as defined by the authorities. *Lowell* v. *Newport*, 66 Maine, 89, 90 and cases cited.

Hence though absent when the father moved to Thorndike, the daughter's home, she being a minor, went with him. She then had a home derived from her father, established in the defendant town, and that was her home when she became of age in October, 1870 and to that home she returned in 1872 or 1873. Her absence while a minor for the purpose as shown by the evidence, be that absence longer or shorter would not interrupt that home. *Parsonsfield* v. *Kennebunkport*, 4 Maine, 47.

As the father did not gain a settlement in Thorndike before the pauper arrived at her majority, it becomes necessary to ascertain whether she gained one there herself by a five years' residence after she became of age. As at the beginning of that period, or at the time when she became of age, she had an established home in Thorndike, the only remaining question is, whether that home continued for the required time. Having been once fixed, if its continuance is not to be presumed until an interruption is shown, as held in *Brewer* v. *Linnaeus*, 36 Maine, 430, and *Chicopee* v. *Whately*, 6 Allen, 508, it would at least require less proof than it would to show both its establishment and continuance. The only evidence relied upon to show the interruption of this home, is the several absences of the pauper.

These, in the absence of any explanation, would hardly lead

to any inference either way. It is clear enough that continued presence is not necessary to retain a home, or residence. It is also quite obvious that it is in most cases difficult to find an instance of absence without some connecting circumstances explanatory of its purpose. In *North Yarmouth* v. *West Gardiner*, 58 Maine, 207, and *Ripley* v. *Hebron*, 60 Maine, 393, it is held that "when a pauper leaves a town where he has resided, having no family, leaving no house or place therein to which he has any right to return, and having no effects save the clothes he wears, the law does not presume that he intends a temporary absence, and has a continuing purpose to retain a home in such town, and return to it at some future period." The effect of these decisions is at most, that when an absence is proved without the presence of certain circumstances understood to be indicative of an intention to return and to retain the home left for a time, the law will not presume that intention, but will leave it as a question of fact with the burden upon the party relying upon it. In the case at bar, the absences are admitted, but the plaintiff proves all or nearly all the circumstances which are named, and by implication if not expressly, assumed as proof of a temporary absence and an intention to return. The case shows clearly that each time the pauper left, it was for a purpose in its nature temporary, that she left behind wearing apparel and bedding, all the property she had except what was necessary for her immediate use, that she expressed an intention to and did in fact return, first, perhaps, in part for a visit, as her purpose was not fully performed, but also as a home for the repairing of her wardrobe, afterwards on account of sickness, and finally and before the removal of her father from Thorndike, when sickness had become too severe for labor, permanently. In all this time, there is no pretence that she had established any other home, and there is an entire want of proof of any abandonment of that she had with her father. It is, however, claimed that her father's consent was wanting, and without that, as she had no home in Thorndike except at her father's house, she could not gain a settlement in Thorndike, and much stress is laid upon the remark he made to her when she left the last time, "that he

should buy a farm in a year or two, and when he did, she could come home. " It is claimed that this was a virtual denial of a home to the daughter until the farm was bought. We do not understand such to be the proper interpretation of the language used. The daughter was then in poor health. She had then, on that account, been at home nearly one year. The father had received, and so far as appears, treated her as a daughter, providing for her as her necessities required, and making his home hers. He did not say that when the farm was bought he would, as a matter of the future, give her a home, but, apparently lamenting the necessity, in her then condition, of going away at all, he, recognizing that she then had a home with him, says, to that home you may then come, meaning, evidently, to remain permanently. Such we might expect from the ordinary feelings of a father, and such we deem the proper and fair construction of the language, and the most in accordance with his subsequent conduct. She did come home before the purchase of the farm, was received and cared for without objection, and has remained ever since.

It is argued that personal presence, as well as intention, is necessary in order to constitute a home. Be it so. There is no specified time in which the personal presence must continue. It may be longer or shorter, as the absences may be longer or shorter, without interrupting it. A home may be established or abandoned in one day. In 1872 or 1873, the case finds that she returned to her home, then in Thorndike. True, she did not then expect to and did not long remain. But her then acts and words, as well as her previous and subsequent conduct, show that she came to it as her home, and that it was not subsequently abandoned, but remained in the defendant town until she removed with her father from there in 1879, giving more than the five years necessary, even if we reckon from 1873.

*Defendants defaulted.*

PETERS, C. J., VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.