THE TOWN OF FAIRFIELD *vs.* THE TOWN OF EASTON.

Third Judicial District, Bridgeport, April Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A pauper 66 years old, born in Newtown, lived there continuously until his house was burned in October, 1894. About July 1st, 1895, he went to the house of his sister in Easton, to live, and lived with her until May, 1899, when she could no longer keep him and he returned to Newtown and lived there most of the time until he came to want in Fairfield. While living in Easton he had no intention of returning to his former place of residence, or of making any other place his home so long as his sister would keep him, nor did he have any definite intention as to what he would do if at any time she refused to keep him longer. The trial court found that after May, 1899, the pauper had no intention to change his then existing domicil, wherever that might be, and reserved the case for the advice of this court. *Held:* —
1. That the burden of proving that the pauper had acquired a settlement by commorancy in Easton rested upon the plaintiff.
2. That the finding, taken as a whole, fairly imported that after July 1st, 1895, the pauper had a fixed, permanent residence or home with his sister in Easton, and that his domicil was in that town.
3. But that he had gained no settlement in that town, since the four years' continuous residence required by statute (§ 3288) for that purpose had not expired in May, 1899, when he ceased to live there.
4. That the mere fact that the pauper did not intend to change his domicil after May, 1899, did not of itself continue his "residence" in Easton after that date.

Argued April 19th—decided May 29th, 1901.

ACTION to recover for supplies furnished a pauper, brought originally before a justice of the peace and thence by the defendant's appeal to the Court of Common Pleas in Fairfield County and reserved by that court, *Curtis, J.,* upon a finding

of facts, for the consideration and advice of this court. *Judgment advised for defendant.*

The material facts found are these: Alfred Stillson, the pauper in question, a bachelor 66 years old, was born in Newtown and lived there continuously at an old homestead until the house thereon was burned down in October, 1894. He owned three sevenths of the homestead, subject to a mortgage, and had no other means. At the time of the fire he was living on the homestead with a nephew. After the house burned down he lived here and there with friends in Newtown, until March, 1895, when he visited around temporarily with friends in Easton, intending to return to the old homestead, and went back to Newtown about the middle of June of that year. "On or about July 1st, 1895," he went to the house of his sister in Easton to live, and thereafter continued to live there with her consent until May, 1899. In doing this he intended to remain at his sister's house as his home, so long as she would keep him, and had no intention to return to his former place of residence or to make any other place his home so long as she would keep him, and had no definite intention as to what he would do if at any time she refused longer to keep him. During the time that he thus lived at his sister's house he kept a bed and a few other articles of furniture at the old homestead at Newtown, and continued to own his interest in said homestead, and each year made three or four temporary visits to Newtown, and voted there in 1896 and on one other occasion.

From the facts stated in the preceding paragraph, and from the declarations of Stillson, the court finds that during the time of his residence at his sister's aforesaid, Stillson "intended to and did claim Newtown as his residence, in order to maintain his right to a settlement there as a pauper." If, in view of the other facts found, the facts and intentions above stated "can properly be held to establish a domicil for Alfred at Newtown, from July, '95, to May, '99, or for any intermediate period, he had such domicil, otherwise I find that his domicil was at Easton after July, 1895."

In May, 1899, Stillson made a visit to Newtown, and while

he was there his sister, being aged and quite ill, concluded that she could no longer keep him, sent him notice to that effect, which he received, and had the few things that he owned packed and sent to him at Newtown, where he received and stored them. Thereafter he visited around among his relatives in Newtown, spent one day in Easton, called at his sister's house and she refused to let him remain there longer, took a tramp to New Milford, and finally, on July 1st, 1899, went to his nephew's at the old homestead and lived there with him in the barn until November 1st, 1899. Prior to this he, on June 12th, 1899, in settlement of a debt, had conveyed his interest in the homestead to his nephew by a deed drawn by the town clerk of Newtown, in which deed Stillson was described as of the town of Easton. In August, 1899, he applied to Newtown for aid as a pauper, and his application was denied. About November 1st, 1899, he went to the home of a brother-in-law in Easton, where he stayed till about Thanksgiving Day, when he applied to Easton for aid as a pauper, but receiving none he went to Fairfield where he has since remained. " In and after May, 1899, said Alfred had no intention to change his domicil, and I find it to have continued wherever it was at and before said time."

*Daniel Davenport*, with whom was *Elmore S. Banks*, for the plaintiff.

*Curtis Thompson*, for the defendant.

TORRANCE, J. Upon the facts found it is clear that prior to July 1st, 1895, Stillson had no settlement in Easton. The ultimate question in the case is whether he acquired one by commorancy there, after that time. The burden of proving that he did is upon the plaintiff, and unless the facts found show that he did, judgment must be advised for the defendant.

The statute (General Statutes, § 3288) under which the questions in the case arise, provides that " no inhabitant of any town . . . in this State shall gain a legal settlement in

any other town unless he shall have resided . . . four years continuously in such town." We think the fair import of the finding, taken as a whole, is that after July 1st, 1895, Stillson's fixed and permanent residence, his home, was at his sister's house at Easton. He went there, and resided there, intending to make it his home so long as his sister would keep him; he had no intention of returning to his former home, nor of making any other place his home. An actual residence in his sister's house with such an intent, made that house his domicil, his home, his fixed and permanent residence. "It is true, there is a wide difference between domicil and mere residence. Of course they may be, and usually are, at the same place, and it is quite obvious that they may be at different places. But domicil is but the established, fixed, permanent, and may therefore be said to be the ordinary, dwelling-place or place of residence of a party, as distinguished from his temporary and transient though actual place of residence." Salem v. Lyme, 29 Conn. 74, 79.

It is true that after going to his sister's in July, 1895, Stillson made short visits yearly to Newtown, and voted there twice, and kept a few of his belongings at the old homestead, and claimed a residence in that town for certain purposes; but these facts, in and of themselves, and in view of the other facts found, do not as matter of law establish his residence and domicil in Newtown; at most they were evidential facts tending to prove such residence and domicil, and the court, taking into consideration all the facts proved, rightly decided that his domicil and residence were in Easton after July 1st, 1895.

The trial court has thus found that in July, 1895, Stillson began such residence in Easton as would, had it remained "continuous" thereafter for four years, have given him a settlement in that town, all the other statutory provisions being complied with; Reading v. Westport, 19 Conn. 561; New Milford v. Sherman, 21 id. 101; Salem v. Lyme, 29 id. 74; New Hartford v. Canaan, 54 id. 39; and the controlling question in the case narrows itself down to this, did such residence, in view of what took place in and after May, 1899, remain continuous for four years after it began?

We think that upon the facts found it did not.    Up to May, 1899, Stillson had a home, a fixed and permanent place of residence, in Easton, and he in fact and in legal contemplation resided there.    In that month he was deprived of that home, and as to him it ceased to exist in fact and in law.    Thereafter he never had any fixed residence or place of abode in that town, nor did he attempt to acquire any other there. He had no property there, that was all in Newtown; and he himself was not thereafter in Easton, save for one day for a temporary purpose, until he visited his brother-in-law in November following.    There are no facts found sufficient to show that after he was turned out of his home in Easton, he intended to go back and make some other place in that town his home; nor that his absence thereafter from Easton was for some temporary purpose merely; nor that he still regarded Easton as the town of his home; and, in short, there is nothing in the finding to show that after May, 1899, he had such continuous residence in Easton as the law requires in order to gain a settlement; his residence, begun there in July, 1895, was broken and interrupted in May, 1899, before the statutory four years had expired, and consequently he acquired no settlement in Easton.

The court below has found, in effect, that in what Stillson did after he was turned out of his sister's house he did not intend to change his Easton domicil.    There may be a breach and interruption of "continuous" residence by acts which do not effect a change of domicil; *Reading* v. *Westport*, 19 Conn. 561; *Washington* v. *Kent*, 38 id. 249 ; and we think that the mere fact that Stillson did not intend to change his domicil, did not of itself continue to give him, after May, 1899, a "residence" in Easton, within the meaning of the statute under consideration.    Upon the facts found that residence ceased in May, 1899, notwithstanding his want of intent to change his domicil.

The Court of Common Pleas is advised to render jugdment for the defendant.

In this opinion the other judges concurred.