TOWN OF WASHINGTON vs. TOWN OF WARREN.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 2d—decided July 27th, 1937.

*Thomas J. Wall,* with whom, on the brief, were *Thomas F. Wall* and *Robert A. Wall,* for the appellant (plaintiff).

*William M. Foord,* for the appellee (defendant).

BANKS, J.   The plaintiff town is seeking to recover the amount expended by it for the support of a pauper, Orlo Cooke, alleging that he belongs to the defendant town, and that the latter is obligated to support him under General Statutes, § 1693, which provides that "each town shall maintain and support all the poor inhabitants belonging to it, whether residing in it or in any other town in the state."   One "belongs" in a town in which he has acquired a legal settlement. *Reading* v. *Westport,* 19 Conn. 561, 564.   The sole question here involved is whether Orlo's legal settlement is in the town of Washington or that of Warren.

He was born in Kent, April 22d, 1909.   His parents moved from Kent to Warren in March, 1910, where

they lived together until June, 1914. During that period they received no aid from the town. Consequently his father, having maintained himself and his family four years continuously in Warren without becoming chargeable to it, acquired a legal settlement there. General Statutes, § 1686. On June 22d, 1914, the father, Charles Cooke, deserted his family, and they have not seen or heard from him since January or February, 1915. In April, 1922, his wife, Maude, secured a divorce from him, and was granted the custody of their son Orlo. After her husband's desertion Maude Cooke was unable to support herself and her family, and received pauper aid from the town of Warren. On September 15th, 1914, upon the application of the selectmen of Warren, the Court of Probate committed Orlo to the Gilbert Home, at Winsted. In June, 1925, having reached the age of sixteen, he was discharged from the Gilbert Home and went to his mother, who was then living in Washington. In September of that year he went with his mother to Philadelphia where he lived until September, 1927, when they both returned to Washington. He lived there, boarding with his brother, until January, 1929, when he returned to Philadelphia for medical treatment and came back to Washington in December, 1930, and lived there part of the time with his brother and part with his mother until October, 1932, when he applied for and received aid from the town of Washington. He became of age on April 22d, 1930.

It is not claimed by either party that Orlo acquired a legal settlement in either the plaintiff or the defendant town in his own right. His father had acquired a legal settlement in Warren in 1914. Orlo was then five years old and his legal settlement was that of his father. *Plainville* v. *Milford,* 119 Conn. 380, 383, 177 Atl. 138. The plaintiff contends that he has not

since then acquired any other legal settlement, and that Warren is the town where he "belongs." The defendant contends that upon her abandonment by her husband Orlo's mother became the head of the family and could acquire a settlement in her own right which would become the settlement of her minor children, that she did acquire such settlement in Washington which became the legal settlement of Orlo, and that that is the town where he "belongs." Assuming that, as claimed by the defendant, Mrs. Cooke, after her abandonment by her husband, became the head of the family, and could acquire a settlement in her own right, which would become the settlement of her minor children, two questions are presented upon this appeal, first, did she acquire such a settlement in her own right in the town of Washington, and second, if she acquired such settlement, did it become, by derivation, the settlement of her son, Orlo.

Except under circumstances not here present, no inhabitant of any town in this State can gain a legal settlement in any other town, under the provisions of § 1686 of the General Statutes, "unless he shall have resided . . . four years continuously in such town, and shall have maintained himself and family during the whole of said period without becoming chargeable to such town." We have held that to acquire a settlement under this statute "the residence must be the fixed, permanent, established residence or home, as distinguished from that which is transient merely." *Salem* v. *Lyme*, 29 Conn. 74, 80; *Madison* v. *Guilford*, 85 Conn. 55, 59, 81 Atl. 1046; *Chaplin* v. *Bloomfield*, 92 Conn. 395, 397, 103 Atl. 118; *Newtown* v. *Southbury*, 100 Conn. 251, 253, 123 Atl. 278.

The trial court has found in detail the facts as to Maude Cooke's life after her husband deserted her in 1914. She continued to live in Warren until February,

1916. Thereafter she supported herself as a domestic or nurse, finding employment in various places, and carrying her belongings with her in suit cases as she moved from place to place on account of her employment. She first went to Washington where she stayed from February, 1916, to July, 1917. Thereafter she lived for varying periods in Springfield, Warren, Washington, Torrington, Hartford, Philadelphia and Atlantic City, remaining no more than two years in any one place prior to September, 1927. At that time she returned to Washington and remained there until Orlo applied for aid in October, 1932. Prior to her return to Washington in 1927 Mrs. Cooke had returned there from other places where she had been employed on five different occasions, remaining there each time for periods ranging from one month to a year and eight months. She had lived for longer consecutive periods in Hartford and Philadelphia. Except for two short periods when she stayed with her sister, she lived while in Washington in the families of various people by whom she was employed. Apparently the length of her stay there, as in the case of her stay in other places, was determined by the term of her employment in the various families where she worked. It seems clear that, during this period at least, she had no fixed, permanent, established home in Washington, absences from which were merely temporary. Except for the fact that her sister lived there, she would seem to have had no reason for making that her home except during the periods of her temporary employment there.

The intent is the controlling factor in determining the question of domicil. *Roxbury* v. *Bridgewater*, 85 Conn. 196, 201, 82 Atl. 193; *Newtown* v. *Southbury*, supra, p. 253. The trial court has not found an intention on her part to establish a domicil in the town of Washington. Strictly speaking the question is not

one of domicil but of continuous residence within the terms of the statute. And by this is meant actual and not merely constructive residence. *Salem* v. *Lyme*, supra. "One who 'resides' in a town, within the intendment of this statute, is one who is an actual, stated dweller as distinguished from a transient dweller, even though he have a technical domicil elsewhere." *Chaplin* v. *Bloomfield*, supra, p. 396. The picture presented by the finding is that of a transient dweller who, at least up to September, 1927, had not established a permanent home anywhere.

From September, 1927, to October, 1932, Mrs. Cooke actually resided continuously in Washington, being employed there until September, 1931, then keeping house with Orlo until February, 1932, and after that living with her sister. She thus, in October, 1932, had resided continuously in Washington more than four years without, so far as appears, having become chargeable to the town. The trial court reached the conclusion that she had consummated a settlement there prior to 1932. Assuming the correctness of this conclusion, the question remains whether such settlement became by derivation the settlement of her son Orlo. The settlement of a mother acquired in her own right becomes by derivation the settlement of her minor unemancipated children. But Orlo became of age April 22d, 1930. His mother had not then acquired a settlement in Washington. Ordinarily a child is emancipated at majority. *Plainville* v. *Milford*, supra, p. 384. If there are circumstances under which this is not so, they do not appear to be present here. If it be deemed of importance, Orlo, when he became of age, was not a member of his mother's household, or under her care or control, or physically incapable of self-support. In cases where this precise question has arisen, it has been held that a child will not take

derivatively the settlement of a parent acquired by a residence commenced before the child arrives at full age and completed subsequently. *Poultney* v. *Glover,* 23 Vt. 328; *Hampden* v. *Brewer,* 24 Me. 281; *Searsmont* v. *Thorndike,* 77 Me. 504, 507; *Andover* v. *Merrimack County,* 37 N. H. 437; *Shirley* v. *Lancaster,* 88 Mass. (6 Allen) 31. Children may acquire a settlement derived from that of their parents because the latter have the legal control of their persons and the right to their services. When they become of age that legal control and right to service ceases, and with it the reason for the acquisition by them, through derivation, of a settlement subsequently acquired by the parent. *Springfield* v. *Wilbraham,* 4 Mass. 493, 496. Orlo, after he became of age, could of course acquire a settlement in his own right, but had not done so when he applied to the town for aid in October, 1932. Since he had not at that time acquired a settlement in the town of Washington either in his own right or by derivation from the settlement of his mother, he still retained the settlement of his father in the town of Warren, and that was the town where he belonged.

It is agreed that the reasonable value of the necessary support furnished by the plaintiff was $586.06.

There is error, and the cause is remanded to the Court of Common Pleas with direction to render judgment in favor of the plaintiff for $586.06 with interest.

In this opinion the other judges concurred.