### WILLIAM G. PARKER v. FRANCES J. PARKER

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 76957

Memorandum filed March 1, 1949.

*Nicholas P. Nanos,* of Stamford, for the Plaintiff.

*Raymond J. Cannon,* of Hartford, and *Peter J. Ryan,* of Stamford, for the Defendant.

COMLEY, J. This is an action by a husband for a divorce on the ground (General Statutes, Rev. 1949, § 7327) of "legal con-finement, because of incurable mental illness, for at least five years next preceding the date of the complaint in such action." The parties were married in Maryland in March, 1939. Shortly thereafter they moved to Stamford, Connecticut, where they

intended to remain permanently. At times the defendant ex-
hibited signs of mental disturbance which became so extreme in
July, 1942, that she was placed in the Fairfield State Hospital,
first on a temporary commitment by her physician and then by
an order of the Probate Court for the district of Newtown dated
August 19, 1942. In the same month the plaintiff entered mili-
tary service. About a year later, on July 17, 1943, the defend-
ant escaped from the hospital and went to Baltimore, Maryland,
where she remained at large until November, 1944. Then, be-
cause of her actions, she was detained briefly in the Maryland
State Hospital, from which she was brought back to Connecticut
by her father. Again she was placed in the Fairfield State Hospi-
tal, first on a temporary commitment by her private physician
and then by an order of the Probate Court, dated December 15,
1944. In the meantime, on July 17, 1944, one year after the
date of her escape, her name had been removed from the roll
of inmates at the hospital, under General Statutes, Rev. 1949,
§ 2658, which provides that "the name of any person who shall
have escaped from any institution for the mentally ill and shall
not have been returned to such institution within one year there-
after shall be stricken from the records of such institution and
such person shall not thereafter be returned to such institution
except upon further commitment by some court of competent
jurisdiction."

Between August, 1942, and January, 1946, the plaintiff was
in military service. In the latter month he was discharged and
returned to Stamford where he remained until August, 1946,
when he removed to the state of New York. He has been there
ever since and now lives at Glen Cove on Long Island where he
intends permanently to remain. The complaint in this case is
dated February 13, 1948.

The first question is whether Connecticut has jurisdiction to
grant a divorce. A prerequisite to such jurisdiction is that "one
of the parties should be domiciled in the forum at the time when
the action is commenced." *Morgan* v. *Morgan,* 103 Conn. 189,
195. The plaintiff is admittedly domiciled in New York. There-
fore, to maintain his action, he must establish that his wife is
domiciled in Connecticut. When he moved to New York in
August, 1946, with the intention of permanently remaining
there, he effected a change of domicil and her domicil followed
his in the absence of circumstances giving her a separate domicil.
*Foss* v. *Foss,* 105 Conn. 502; *McDonald* v. *Hartford Trust Co.*
104 Conn. 169.

Connecticut has been liberal in recognizing the right of a wife to establish a separate domicil. *Torlonia* v. *Torlonia,* 108 Conn. 292; *Boardman* v. *Boardman,* 135 Conn. 124. These cases, however, do not affect the fundamental proposition that domicil is largely a question of intent. *Washington* v. *Warren,* 123 Conn. 268, 272; *Mills* v. *Mills,* 119 Conn. 612, 617. There is an indispensable element of choice, of volition, of free will involved in the establishment of a separate domicil by a married woman. This element is lacking in the present case. At the time when the plaintiff moved to New York in August, 1946, the defendant was suffering from an incurable case of dementia praecox. She entertained numerous hallucinations and delusions. She had violent tendencies and required confinement in the so-called "disturbed section" of the hospital. In April, 1947, she underwent a lobotomy operation which brought some improvement, according to the report of the examining physician, in her violent tendencies, but she still, in his language, "exhibits apathy and emotional constriction . . . has no insight into her condition . . . and is indifferent to normal interpersonal relationships." There is no indication that she wishes to remain in Connecticut or that she does not wish to live with her husband if she could. She is in this state only because she is compelled to be here. It is impossible to attribute to her the requisite intent to establish a separate domicil or, in fact, any intent at all.

I, therefore, conclude that her domicil followed that of her husband to New York in August, 1946, and that Connecticut has no jurisdiction to entertain his complaint for divorce.

But, even in the absence of this jurisdictional defect, it is doubtful whether the plaintiff has established the ground for divorce upon which he relies. The statute (§ 7327) requires "legal confinement, because of incurable mental illness, for at least five years next preceding the date of the complaint." There has been no actual confinement of the defendant for five years prior to February 13, 1948, when this action was commenced. She was confined originally for one year between July, 1942, and July, 1943, when she escaped. Then she remained at large for a period of sixteen months until November, 1944. She was then returned to the hospital and was actually confined there for only three years and three months "next preceding" the date of the complaint. The plaintiff argues that the words "legal confinement" as used in the statute, do not require actual, physical confinement but are satisfied if the person is subject legally to

confinement. But here, even assuming that the plaintiff's argument is sound, the defendant has not even been subject legally to confinement for the necessary five-year period. She was originally committed to the hospital in July, 1942, and was there confined under that commitment until July, 1943. She then escaped and was still at large in July, 1944, when, as required by § 2658, her name was stricken from the records. She remained at large until November, 1944, when she was brought back to Connecticut. At that time, by the terms of the statute, the original commitment of 1942 had lost its force and she was no longer subject to legal confinement under it and it was necessary to institute new proceedings and obtain a new commitment in order to detain her. Therefore, between July and November of 1944, a period of four months, she was not only not confined as a matter of fact but she was not even subject legally to confinement.

Judgment is rendered for the defendant.