INHABITANTS OF SEARSMONT *vs.* INHABITANTS OF LINCOLNVILLE.

Waldo.    Opinion September 18, 1890.

*Pauper.    Verdict.    Exceptions.    New Trial.    R. S., c. 24, § 35.*

When a single sentence in a charge is excepted to, which was used simply as an illustration of an extreme proposition of law but when considered in connection with the remainder of the charge upon the same topic it appears that the jury could not have been misled, the exceptions will not be sustained.

When a verdict is well founded on testimony, although conflicting on a principal issue, it is not sufficient for setting it aside as against evidence that the law court on reading a report of the evidence might and, perhaps, would come to a conclusion different from a jury of the vicinity who saw and heard the witnesses and rendered their verdict without bias or prejudice.

ON MOTION AND EXCEPTIONS.

The case is stated in the opinion.

*Thompson and Dunton,* for plaintiffs, in support of the motion, &c.

This is peculiarly a case in which the claim to a home is restricted to the house and family of a particular person.    The pauper could not have had a home in Clark's family without his permission.    We search in vain for any evidence of such permission in the case.    *Corinth v. Lincoln,* 34 Maine, 314.

The verdict is wrong; against the law and evidence and the weight of evidence in the case; and should be set aside.

The instructions to which exceptions are taken are wrong, and misled the jury to the prejudice of the plaintiffs.

In this case, there is no claim or pretense that the pauper had a home at any place in Searsmont prior to his last marriage, except at George H. Clark's house, and as a member of his family.    There is no evidence that the pauper claimed the town of Searsmont, as such, to have been his home; but on the contrary he expressly negatives any such claim.

Now as applied to this case, the jury must have understood from the instructions, that it was only necessary for the pauper to claim a home at Clark's to establish it by his presence, and only necessary for him to intend to return to the town of Searsmont as his home, in order to retain it during his absence.

The important element of Clark's consent to such home at his house is excluded.

"The legal correctness of instructions must be determined in some measure by the propositions of fact attempted to be supported by the evidence at the trial," say the court in *Corinth* v. *Lincoln*, 34 Maine, 314, a case identical with the case at bar, in the leading question in controversy. In that case the judge instructed the jury that, in order for them to find that the pauper had gained a settlement in Corinth by five years residence, they must be satisfied that she had voluntarily and by mutual consent of her parents and herself made herself a member of his family." And the instruction was held to be correct, as applicable to that case, those being the propositions of fact attempted to be established on the one side, and disproved on the other.

The instructions given are not applicable to the facts in the case, and wrought mischief. Neither are the instructions correct, when considered to have been given as abstract rules of law. The town as such is made prominent as the home. No place of abode, no house or particular place to which the person has a right to return is necessary. In fact, no home, in its usual and ordinary signification, is necessary. "He may sleep out doors if he desires."

No reported case goes to this extent. The case of *Parsonsfield* v. *Perkins*, 2 Maine, 411, the strongest reported case in support of the instructions, only holds that one may be considered as dwelling and having his home in a town, though he has no particular house as the place of his fixed abode.

Can a person be considered as having his home in a town when there is no house in that town, no particular place, in which he has a right to stop? Possibly the Court may hold that he can, while personally present with the intention of remaining and claiming the town as his home. Can he retain a home in the town during his longer or shorter absence, if when he passed out of that town there was no house or place in the town to which he intended to return or had a right to return, and no vestige of a home remaining in the town?

*W. H. Fogler*, for defendants.

The exception to instructions now relied on, is that, "A person may be considered as having his home in a certain town, although he has no particular house there as the place of his particular abode," &c. The presiding justice had before given the jury the elements necessary to make a person a resident in a town. "It is made up of two elements, presence and intention." "Presence and intention are both necessary. A person must be personally there to commence this residence, but that personal presence must be coupled with the intention to fix that as an abiding place, and where these two elements, personal presence and intention, are combined, that instant he has a residence, a home in the town." Having defined and illustrated what is necessary to constitute a home within the meaning of the statute, the presiding justice proceeded to instruct the jury upon the effect of absences from a home. He said, "When a home is once gained, an absence from it for a longer or a shorter period for temporary purposes does not change his residence. When a sailor goes to sea, or a soldier to war, or a juryman to court, it does not necessarily change his residence. A person may be gone ever so long for a temporary purpose and with no intention of abandoning his home, and not lose his residence. The home, I say, must be a permanent one." In this connection, discussing the effect of a temporary absence the instruction complained of was given. Two propositions were distinctly and clearly stated to the jury. First, that to gain a home, a residence, in a town there must be bodily presence in the town with the intention of remaining there; second, that having in that way, by bodily presence and intention, acquired such home, absence for a temporary purpose would not change or abandon it. This is the sum and substance of the entire instruction, and of its correctness, no doubt can be entertained.

In *Parsonsfield* v. *Perkins*, 2 Maine, p. 415, Chief Justice MELLEN says of the pauper, "Since that time he has generally resided there, though he has had no particular house in that town as his place of fixed abode." This language of that distinguished jurist reported nearly seventy years since, has not

even been criticized by any justice of this court, but on the contrary, has been recognized and adopted as a true exposition of law.    Mr. Justice KENT, in *Ripley* v. *Hebron*, 60 Maine, p. 395, says, "When a man has thus left a town, and has, to human view, no habitation there, and no visible hold on it"  .  .  .  "the law .  .  .  leaves it to the jury to determine, upon all the evidence and all the circumstances and all the probabilities, what his intention and purpose were in fact."    If this instruction is erroneous, then a man's residence is broken up if his landlord ejects him from the home in which he has been living and he has no other house engaged; if his boarding house keeper turns him away, if he have not another boarding place engaged; if his house is burned in the night; if by reason of poverty or misfortune a man "hath not where to lay his head," though his attachment to the town and his intention of remaining there be ever so strong. "Bodily presence and intention of remaining," would be no complete definition if a man must have "a particular house there as the place of his particular abode."

VIRGIN, J.    Assumpsit founded on R. S., c. 24, § 35, for pauper supplies, furnished on March 21, 1889, to a man and his family whose settlement was alleged to be in Lincolnville.

Having admitted that the pauper had a settlement in their town in 1862, when he became twenty-one years of age, the law imposed upon the defendants the burden of satisfying the jury that thereafter he acquired a new settlement in Searsmont by having his home therein for "five successive years without receiving supplies as a pauper," and that any absences therefrom during the five years were of such a character as not to interrupt his residence.    *Ripley* v. *Hebron*, 60 Maine, 379.

This burden the defendants claim to have sustained,— and the jury have so found,— by testimony tending to show that he acquired such a settlement by having his home therein between the years 1868,— when his former wife was divorced from him,— and 1879, the date of his second marriage.    Among other witnesses introduced for that purpose, the pauper himself testifies in the most unqualified manner that he worked several seasons at a Mr. Clark's in Searsmont during these years, and

had his washing and mending done there while working at other places; that he always went there when returning from his various vocations of fishing, coasting, pressing hay and threshing; that he considered Clark's house his home, and he had no other,

On the contrary, Mr. and Mrs. Clark testify that they did not recollect that the pauper ever left any clothing at their house or the house of their father when away, or that any washing or mending was done there for him when not at work there, or that he came there when returning from his business at other places. Mr. Clark, who had charge of his father's place after 1864, testified also that the pauper worked for him the whole or parts of the seasons of 1868, 1874, 1878 and 1879; that the pauper never asked consent to make his (Clark's) house his home; that he never gave his consent to do so; and that never to his knowledge did the pauper ever have a home there except when there at work.

There was also testimony that the pauper worked several falls and winters at pressing hay for a Mr. Frohawk in Searsmont.

On the principal issue of fact the testimony was conflicting. The jury who saw and heard the witnesses, without any suggestion of bias or prejudice, found by their verdict that the pauper did acquire a settlement in Searsmont; and while by reading the testimony we might and probably should come to a different conclusion, still we have not the facilities which a jury of the vicinity had for arriving at the truth. And as there is ample testimony if true to sustain the verdict, we think the motion must be overruled.

The charge was very full and explicit upon the law and the only exception taken and now relied upon is to the following extract therefrom: "A man may claim to have, and have his residence in a town, if he does not break the criminal law, and no man can shut him out of that town or deprive him of that residence if he has that intention, although there is not a roof in that town that he has a right to lie under and call his own. He may sleep out doors if he desires."

Had this been all that the charge of the presiding justice contained, upon the subject of residence, the plaintiffs' complaint

that the jury were misled might have some foundation. But the copy of the whole charge which was expressly made a part of the bill of exceptions, shows that the charge was very full on this subject, and the portion excepted to is a single sentence selected from it. After explaining to the jury the distinction between a fixed and permanent residence and that of a temporary character, and that one may have a home in a town although he has no particular house there as the place of his particular abode, he made the remark to which exception is taken as an illustration simply of an extreme case. And then after declaring that the want of a house or shelter is a circumstance affecting the question whether he really has a residence in a town or not he then called the attention of the jury directly to the issue as follows : "When a person's residence in a town depends wholly upon his having a home in a particular house or with a particular family, he must have a right to dwell there with such family for such a period of time as he sees fit to be there. It may be based upon the permission of the owner granted by direct promise to allow him to stay, or by implication growing out of the situation of the parties, as where one labors for another," &c. And the presiding judge also called the attention of the jury to the testimony of the witnesses upon the one side and the other upon this point.

*Motion and exceptions overruled.*

PETERS, C. J., WALTON, LIBBEY, HASKELL and WHITEHOUSE, JJ., concurred.