INHABITANTS OF MOSCOW *vs.* INHABITANTS OF SOLON.

Somerset.     Opinion, July 22, 1939.

*Clayton E. Eames,*
*James H. Thorne,* for plaintiff.
*Merrill & Merrill,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J.   On defendant's motion for new trial. The case is for pauper supplies furnished to Andrew Rollins, his wife and minor children. By stipulation the only issue raised was as to the settlement of the pauper. It was agreed that his original derivative

settlement was in the plaintiff town; that he came to Solon in 1917 and left in 1923, during all of which time he was employed by the railroad company as a section hand; and that he received no pauper supplies during this period. It was also admitted that for each of the years 1918 to 1923, he was assessed a poll tax in Solon and paid the same.

Upon the plaintiff rested the burden of proof to sustain compliance on the part of the present pauper with the provision of R. S., Chap. 33, Sec. 1, Subdivision VI:

"A person of age, having his home in a town for five successive years without receiving supplies as a pauper, directly or indirectly, has a settlement therein."

As indicated above, the only element of this statute actually in controversy was whether Andrew Rollins had his home in the Town of Solon for five successive years. The issue is narrowed further by substantial unanimity of testimony or agreement of the parties that Rollins in 1917 moved to Solon and made his home with his son for a short time and until the son moved away. Then he boarded in the house of one Charles Clark, and later in the house of Leslie Clark. In September of 1919, the Clarks sold their house and moved out of the state. By the terms of their arrangement, they were allowed thirty days in which to pack and remove their belongings. The purchaser took possession about a week after the former owners had removed. One question submitted to the jury was whether Rollins actually left the premises during this period. It is clearly shown by the great preponderance of evidence that Rollins was physically absent from this dwelling for a short time, the limits of which were not clearly demonstrated, but were within the range of from three to six weeks. The jury could not reasonably have come to any other conclusion on that issue of fact. It also establishes that Rollins during this period went to the adjoining Town of Embden and boarded in the family of one Hilton, where his brother was already a boarder. He continued at his work on the railroad. About a week after the purchasers of the Clark residence took possession, Rollins returned and made arrangements to board with them. He continued with them until his marriage in 1923, and his subsequent removal from the town.

In a word, the real question is, "When Rollins left Solon in 1919, did he intend to return and did he retain that intention during his absence?"

The leading case of *Ripley* v. *Hebron*, 60 Me., 379, is cited as analogous as to facts. There was a temporary absence of the pauper, causing a comparatively short interruption of actual physical residence. Important in distinction, however, was definite evidence of the pauper's intention to effect a change of residence through his acceptance of the invitation of one Kennedy to make his home with him in another town. In the instant case, the testimony of the pauper, while indicating a faulty memory in some respects, is affirmative of intent and purpose to retain his home in Solon, and not to change his place of residence.

The Court in the Ripley case said:

"When a man has thus left a town, and has, to human view, no habitation there, and no visible hold on it, the law does not assume, or presume that he intends a temporary absence, and has a continuing purpose to retain it as his home, and to return to it as his home at some future period. *Nor does the law assume that he has no such intention as a legal presumption.* (Italic ours.)

"But it leaves to the jury to determine, upon all the evidence and all the circumstances and all the probabilities, what his intention and purpose were in fact. The party setting up the five years' continuous residence, is bound to prove it. This is undoubted. If, whilst attempting to prove it a break in the actual residence is shown, it is for that party to establish such a state of facts as shows that the legal home remained there, notwithstanding the absence."

See also *Solon* v. *Embden*, 71 Me., 418; *Bangor* v. *Frankfort*, 85 Me., 126, 26 A., 1088; *Detroit* v. *Palmyra*, 72 Me., 256; *Searsmont* v. *Thorndike*, 77 Me., 504, 1 A., 448; *Searsmont* v. *Lincolnville*, 83 Me., 75, 21 A., 747; *Ellsworth* v. *Bar Harbor*, 122 Me., 356, 120 A., 50; *Madison* v. *Fairfield*, 132 Me., 182, 168 A., 782.

Gauged by the rule as laid down and elaborated in the foregoing cases, it is clear that the determination of the facts and the in-

ferences and conclusions to be drawn therefrom were for the jury, and upon general motion of the defendant for a new trial, it must plainly appear that there was manifest error in its verdict. Instead, verdict is not inconsistent with the circumstances and probabilities of the case as disclosed by the record, and the inferences and conclusion drawn by the jury as to the intention and purpose of the pauper were justified.

*Motion overruled.*