*New-Haven,*
July, 1848.

Oxford
*v.*
Bethany.

### The town of OXFORD *against* The town of BETHANY.

A legitimate infant child takes the settlement of its father, if he has one, in preference to that of its mother, acquired by a subsequent marriage.

Therefore, where a pauper was the legitimate child of *L*, whose settlement was in *O*, and its mother, before the birth of the child, was married to *T*, whose settlement was in *B*, where the child was born; it was held, that such child took the settlement of its father in *O*, and not that of its mother acquired by marriage in *B*.

But if the mother, after the death of the father, acquire a settlement in her own right, such settlement is communicated to her child.

An illegitimate infant child takes the settlement of its mother acquired by marriage.

THIS was an action of *assumpsit*, to recover for necessary expenses incurred in the support of *Charlotte Lines*, an infant child, claimed to be an inhabitant of the town of *Bethany*.

The cause was tried, at *New-Haven*, *January* term 1848, before *Hinman*, J.

On the trial, it was admitted, that *Zebulon Lines* was a settled inhabitant of the town of *Bethany*, and died, on the 1st of *November* 1843. His widow, the mother of the pauper, on the 17th of *December* following, married one *Talmadge*, a settled inhabitant of the town of *Oxford*; in which town the pauper was born, on the 11th of *July* 1844, where the mother, by reason of such marriage, then had her settlement.

The plaintiffs claimed, that the pauper was the legitimate child of *Zebulon Lines*, and derived from him her settlement in *Bethany*. The defendants denied that she was his child; but if she was, they claimed that inasmuch as she was born in *Oxford*, where the mother, at that time, had her settlement, the settlement of the pauper was in that town.

The court instructed the jury, that if they should find, that the pauper was the legitimate child of *Zebulon Lines*, they must find a verdict in favour of the plaintiffs.

The jury returned a verdict for the plaintiffs; and the defendants thereupon moved for a new trial, for a misdirection.

*Dutton*, (with whom was *Stoddard*,) in support of the motion, contended, That the settlement of the pauper was in *Oxford*. In support of this position, the following considerations were urged. In the first place, the birth of this

*New-Haven,*
*July, 1848.*

*Oxford*
*v.*
*Bethany.*

child in *Oxford* afforded *prima facie* evidence of her settlement in that town.   *Danbury* v. *Newtown,* 5 *Conn. R.* 584.

Secondly, the mother's settlement in *Oxford,* at the birth of the child, was *communicated directly* to the child.   No case can be cited where the settlement of a child is different from that of the mother, if the mother has a settlement in this state.   *Newtown* v. *New-Haven,* 3 *Conn. R.* 600.   *Bozrah* v. *Stonington,* 4 *Conn. R.* 373.   *Guilford* v. *Oxford,* 9 *Conn. R.* 321.

Thirdly, the mother's settlement by marriage is communicated even to her illegitimate children, previously born. *Newtown* v. *Fairchild,* 18 *Conn. R.* 350.   *Newtown* v. *New-Haven,* 12 *Conn. R.* 165.

Fourthly, a child so situated cannot be discarded, by the second husband : he takes his wife *cum onere.*

Fifthly, the presumption of law is, that the child is the husband's.   He makes it his, so far as support is concerned, by marrying the mother.   It is a matter with which other parties have no right to interfere.   *Stegall* & al. v. *Stegall's* admr. 2 *Brock.* 256.

Lastly, all the reasons that govern the settlement of children, apply, in this case, in favour of the defendants.

*C. B. Phelps* and *A. Blackman,* contra, contended, 1. That by the common law, if a widow having a family of minor children living with her, acquire a settlement, *in her own right,* after her husband's death, that settlement is communicated to her children ; but where the subsequent settlement of the widow is acquired *by marriage,* the settlement of such children is not changed.   This is the settled law of *England.* 3 *Burn's Just.* 392,3.   *Woodend* v. *Paulspury,* 2 *Ld. Raym.* 1473.   S. C. 2 *Stra.* 746. 3 *Salk.* 259.   And the reason is, that her children by a former husband do not become a part of her second husband's family, and he is under no obligation to support them.   She has become one person with him ; her services and earnings belong to him ; and she cannot support them, without his permission.   No correlative duties or obligations exist between such children and their stepfather.   The same doctrine is recognized in *Massachusetts, Maine* and *Vermont,* as part of their common law.   *Freetown* v. *Taunton,* 16 *Mass.* 52.   *Scituate* v. *Hanover,* 7 *Pick.*

148. *Fairfield* v. *Canaan*, 7 *Greenl.* 90. *Parsonfield* v. *Kennebunkport*, 4 *Greenl.* 47. *Wells* v. *West-Haven*, 5 *Verm.* 322. And it is also the law of *Connecticut.* 2 *Sw. Dig.* 822. *New-Haven* v. *Newtown*, 12 *Conn. R.* 165. 170. *Sterling* v. *Plainfield*, 4 *Conn. R.* 114. 116. *Bozrah* v. *Stonington*, 4 *Conn. R.* 373. *Newtown* v. *Stratford*, 3 *Conn. R.* 600.

2. That the jury having found, that this pauper is the legitimate child of *Zebulon Lines*, whose settlement was in *Bethany*, the fact of her birth after the death of her father, does not change the law of settlement in relation to her. 2 *Sw. Dig* 822. 3 *Burn's Just.* 390, 1, 2, 3.

3. That the marriage of the mother and the birth of the pauper in *Oxford*, do not affect the settlement of the latter derived from her father. "By the *English* law, as well as by our own, the child acquires a settlement by parentage with its father." 4 *Conn. R.* 116. And a settlement communicated by parentage, supersedes a settlement by birth. 3 *Conn. R.* 600.

Waite, J. The only question in this case, is, whether the pauper, at her birth, took the settlement of her father, or that of her mother. The rule upon this subject, is, that a legitimate child takes the settlement of the father, if he have one; and, in this state, an illegitimate child takes that of the mother.

*Hosmer*, Ch. J., in delivering the opinion of the court, in the case of *Newtown* v. *Stratford*, says: "The first enquiry is for the place of the father's settlement, which, by operation of law, is the settlement of the child; but if the father have no settlement, then that of the mother is communicated; and this is a rule of law, undisputed, and established by repeated decisions." 3 *Conn. R.* 601. And again, in *Sterling* v. *Plainfield*: "By the *English* law, as well as our own, the child acquires, by parentage, a settlement with its father." 4 *Conn. R.* 116.

Here, the jury have found, that the pauper was the legitimate child of *Zebulon Lines*; and it is admitted, that the latter was settled in the town of *Oxford*. It follows, of course, that his child is settled there also, unless there is

*New-Haven, July, 1848.*

*Oxford v. Bethany.*

something in the present case to deliver it from the ordinary operation of the rule.

The circumstance that this was a posthumous child, in our opinion, makes no difference. " If," says *Burns*, " the father dies before the child is born, yet the child shall be settled where the father was settled, before his death." 3 *Burn's Just.* 27.

But the circumstance mainly relied upon, by the counsel for the defendants, is, the marriage of the mother, after the death of her first husband, by which she acquired a new settlement ; and it is insisted, that that settlement was communicated to her child. This would have been undoubtedly so, had the settlement been acquired in her own right, and not by marriage.

The case of *New-Haven* v. *Newtown* is relied upon, as showing, that, in this particular, there is no difference. It was, indeed, there holden, that by the law of this state, an illegitimate child takes the settlement of the mother, acquired by marriage.

That decision was founded upon what was considered, by a majority of the court, as a peculiarity in our law, as applicable to the settlement of illegitimate children. In our opinion, the rule does not apply, nor was it intended to apply, to the case of legitimate children.

The late Chief Justice, in delivering the opinion of the court in that case, remarks, that " as it is now settled in *England*, that a settlement of the mother, acquired by marriage, will not confer a settlement upon her children born before in lawful wedlock, we do not mean to be understood to say, that we should hold otherwise." 12 *Conn. R.* 170. He then proceeded to notice the difference between our law and the common law of *England*, in relation to illegitimate children, and came to the conclusion, that by the former, an illegitimate child took the settlement of the mother acquired by marriage, as well as one acquired in her own right.

The distinction here made, is substantially the same as now exists in *England*, by force of a recent statute. 4 & 5 *W.* 4. *c.* 76. *s.* 71. By that, it seems, the settlement of illegitimate children under the age of sixteen years, born after the passing of the act, follows the mother's settlement, acquired by marriage after their birth. But the settlement of the

legitimate children of a widow, is not changed, by her second marriage. *The Queen* v. *St. Mary*, 4 *Adol. & Ellis*, N. S. 581. (45 *E. C. L.* 581.) *The King* v. *Walthamstow*, 6 *Adol. & Ellis*, 301. (33 *E. C. L.* 84.)

*New-Haven,*
July, 1848.

Oxford
*v.*
Bethany.

Perhaps the reason for making the distinction may be, that, as illegitimate children can, by the common law, inherit no property, and have no father bound to provide for them, they are necessarily dependent upon their mother alone for support and protection ; and therefore, a man, by marrying her, shall not deprive them of their only protector, and throw them upon the parish for support. If he choose to take her, thus situated, he must take with her the responsibilities resting upon her. But in the case of legitimate children, they are not ordinarily in the same destitute condition ; and therefore, the statute is not made to apply to them.

We are therefore of opinion, that the court below did not err in neglecting to give the instruction to the jury, as claimed by the defendants ; and consequently, we do not advise a new trial.

In this opinion the other Judges concurred, except ELLS-WORTH, J., who was absent.

New trial not to be granted.