NATHAN S. FISH *vs.* JOHN S. PERKINS.

The statute (Gen. Statutes, p. 199, sec. 1,) provides that "all persons who have not estate sufficient for their support * * * shall be provided for and supported at the expense of the town where they belong." A man who was partially blind and nearly incapacitated for work, occupied, with his wife, a basement of a small house with an acre of ground, having a life interest in the land and basement, which interest was not worth over two hundred dollars, and was all the property he owned. Held that he was entitled to help from the town under the statute.

It was not necessary that his interest in the property should be disposed of and the proceeds expended before he could be regarded as a pauper.

[Argued May 28th—decided June 13th, 1884.]

ACTION to recover of the defendant the value of supplies furnished to him as a pauper; brought to the Court of Common Pleas of New London County, and tried to the jury before *Mather, J.* Verdict for the plaintiff, and appeal by the defendant for error in the charge to the jury. The case is sufficiently stated in the opinion.

*S. S. Thresher* and *A. P. Tanner*, for the appellant.

*S. Lucas*, for the appellee.

GRANGER, J.  The plaintiff is the keeper of the town poor of the town of Groton, under a written contract, receiving an annual compensation for three years of $2,300, and for an additional term of three years the annual sum of $2,800, and the services of the paupers during both periods. The defendant, John S. Perkins, prior to the making of the contract, had received assistance from the town, and his name was on a list of the poor of the town, which list was submitted to the plaintiff at the time the contract was made.   After the execution of the contract one of the selectmen informed the plaintiff that the defendant had theretofore. received assistance from the town, and that he needed assistance.   Immediately after this notice was given the plaintiff saw the defendant and told him that he would take him and his wife to the almshouse, or give him an order on a store for groceries to the amount of one dollar a week.   The defendant chose the latter, and from that time till August, 1883, the plaintiff furnished the defendant provisions to the amount of one dollar per week from the village grocers by orders.   The goods were charged to the plaintiff upon the books of the grocers, amounting in all to the sum of $312.   It does not appear how old the defendant was, but he was partially blind, and nearly incapacitated for labor.   He occupied, and had a life estate in, the basement of a small house in Groton and one acre of land. The value of the life estate the court finds not to exceed two hundred dollars.   This was the whole estate of the defendant.   His life lease was duly recorded on the land records of Groton on the 4th of January, 1872, and this was known by one of the selectmen.

On the 16th of August, 1883, an assignment was made by the selectmen of the town to the plaintiff of all claims of the town against the defendant for the supplies furnished him by the plaintiff.   This suit is based upon that assignment.   There was no vote of the town authorizing the assignment.   No claim was made by the plaintiff upon the town for any compensation for furnishing these supplies above the amount of the contract.   Nothing was paid by

the plaintiff to the town for the assignment, and there was no consideration for it except the supplies furnished to the defendant.

Upon these facts the defendant claimed that his support as one of the poor of the town was contemplated by the parties at the time of the making of the contract between the town and the plaintiff, and entered into the contract; that the plaintiff had done no more than he was bound to do under his contract, and that therefore the assignment upon which the suit was based was void, being without consideration. The defendant also claimed that he was a pauper, or one of the poor of the town, within the meaning of the statute concerning paupers, and within the contract between the town and the plaintiff, and requested the court to charge the jury that " unless they should find that when the supplies were furnished to the defendant he· owned estate of some substantial value and which in their judgment could reasonably have been appropriated and made to contribute to the support of himself and wife otherwise than it did, then he was a pauper within the meaning of the statute." The court refused so to charge, but upon this point instructed the jury as follows: " Unless the jury find that when the supplies were furnished to the defendant he had property that might have been made available for his support, then he was a pauper within the meaning of the statute."

The request of the defendant was reasonable and proper and well adapted to the facts of the case, and should have been given to the jury, and the instruction as given was calculated to lead the jury to the wrong conclusion, which manifestly they arrived at in rendering a verdict for the plaintiff. It is manifest that, whatever the court intended by the language used, the jury understood that if the defendant owned any property, no matter what or how situated, if it could be disposed of at any price and at any inconvenience or hardship to the defendant, it must be so disposed of and the avails used for his support and that of his wife

before he could be considered a pauper, or one of the poor of the town, and entitled to assistance under the statute.

The fair import of the language of the charge is, that if a person has any estate, available at any price, no matter how small, he must first exhaust that to the last farthing before he can be a pauper. The statute requires no such narrow and illiberal construction, and has never to our knowledge received it.

We agree fully with the venerable and learned Judge WAITE in the case of *Wallingford* v. *Southington*, 16 Conn., 435, where the question was almost the precise one under discussion. Supplies were furnished a person claimed to be a pauper, and to rebut the claim that he was a pauper the defendants claimed and offered to prove that the alleged pauper owned and possessed real estate of the value of more than one hundred dollars, consisting of about three quarters of an acre of land and a small dwelling house in which he and his family lived. The judge says: "We cannot think the law upon this subject is so rigid that if a poor man owns a miserable hovel, used as a shelter for himself and family, he must sell it, provided it is of any value whatever, before he can properly call on the selectmen to assist him in procuring medicine and bread for his sick and famishing children. Such a rule would be harsh and inconvenient." And we add, that such a rule would be a reproach to our civilization and a shock to the benevolent and Christian sentiment of our state. The judge further says: "The statute is to have a reasonable construction, and it seems to us that the instruction given to the jury by the judge on the circuit places the matter upon the true ground;" and it will be seen that the request of the defendant in this case is nearly verbatim the language of the charge in the case cited. The doctrine of this case is sustained by cases from New Hampshire and Massachusetts.

Although the court in the closing paragraph of his charge told the jury that if the defendant was a pauper within the meaning of the statute the plaintiff was bound to provide for him under his contract and there was no consideration for the assignment, yet the only definition of what consti-

tuted a pauper, or who was a pauper under the statute and within its meaning, is that given in answer to the defendant's request heretofore considered; which as we have said was incorrect and misleading.

It seems to have been conceded that the defendant was the owner of this life estate; the only dispute about it was as to its value; nor does it appear that there was any question made but that it might have been sold for some price, and the avails used to purchase food and clothing; but the propriety, the justice and the reasonableness of doing this were entirely withdrawn from the consideration of the jury, as well as the question whether the property was not already appropriated in the best possible manner towards the support of the defendant, and that he was notwithstanding, in the language of the statute, one of those "persons who have not estate sufficient for their support," and who shall be "provided for and supported at the expense of the town where they belong."

The whole case shows most clearly that the defendant was just such a person as the statute provides for,—partially blind, nearly incapacitated for labor, life-tenant of a basement in a small house and of an acre of land. It seems impossible that any one could say that this was estate sufficient for the support of a blind man and his wife, and it is hardly possible to believe that any jury under the instruction given in *Wallingford* v. *Southington* would ever have returned a verdict for the plaintiff.

There are other points made in the case which might be considered, but we think the one discussed decisive of the case. Whether the town had any claim against the defendant, or the plaintiff any claim against the town under the contract, we do not decide, as the contract is not before us. If the defendant was a pauper then no one has any claim on him, neither the plaintiff nor the town, and the whole case depends upon that question. We think it clearly appears upon the facts found that he was entitled to support.

There is error and a new trial is granted.

In this opinion the other judges concurred.