CHARLES A. HARRISON *vs.* FREDERICK GILBERT ET AL.

Third Judicial District, Bridgeport, April Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

During minority one cannot change his settlement acquired by birth.
By marriage the settlement of the husband is communicated to the wife;
    unless one or both then were, or within a year had been, paupers.
The only property owned by *A* was an equitable interest in a farm which
    was worth no more than the unpaid portion of the purchase price;
    and both he and his wife were in a destitute condition and incapable
    of giving their children a decent support. *Held* that the trial court
    was justified in finding that they were paupers.
General Statutes, § 3303, provides that "paupers shall be liable to be
    removed to such places as the selectmen may lawfully designate,
    to be supported as the town or selectmen may direct, and shall be
    subject to the orders of the selectmen;" and § 3293 permits the
    town in which the pauper becomes chargeable to deport him under
    a justice's warrant to the town where he belongs, upon the failure
    of the latter town, after notice, to remove him. *Held* that under
    these provisions the selectmen of the town in which the paupers
    were settled were warranted in removing them from the town in
    which they were chargeable to the town of their settlement, with-
    out resorting to any legal process, and having removed them could

Harrison *v.* Gilbert.

keep them at the almshouse against their will so long as they continued in such a condition as to be a public charge.

Selectmen are not necessarily confined in the exercise of their powers to the limits of the town by which they are elected to their office. In many respects they are the agents of the law and may well be authorized to perform official acts wherever public necessity and convenience require.

Argued April 18th—decided May 3d, 1899.

APPLICATION for a writ of *habeas corpus,* brought to the Superior Court in New Haven County and tried to the court, *Elmer, J.;* facts found and judgment rendered in favor of the respondents, and appeal by the petitioner for alleged errors in the rulings of the court. *No error.*

The petitioner for the writ was Charles A. Harrison, and the persons for whose enlargement the writ was sought were Charles A. Hull and his wife. The defendants in their return justified respectively as first selectman and keeper of the almshouse of the town of Farmington, asserting that the Hulls were paupers belonging to that town, and duly committed to the almshouse, under and subject to the orders of the selectmen.

The finding stated these facts: Charles A. Hull was born in the almshouse in Farmington; after attaining majority, he never resided continuously in any one town as a self-supporting inhabitant for four years, nor acquired a settlement elsewhere; and was a pauper belonging to said town when taken to the almshouse in 1898. While a minor he was apprenticed to a farmer in Franklin, and worked there seven years. He also lived there most of the three following years, and was made an elector and voted at two successive annual elections. He resided in Wallingford from 1891 to 1898, but applied soon after coming there to the town for relief as a pauper, and received it from time to time. During the last two years, the only aid thus furnished was in the shape of medicines and medical attendance from the town physician.

In 1893 Hull paid one Allen $50 and received a bond for a deed of a house and farm in Wallingford, the deed to be given when $750 more was paid. The times for the future

payments were stipulated, and interest ran on all from the Spring of 1893. Possession was thereupon delivered, and Hull moved into the house and cultivated the farm. He has paid in all over $500 on the bond, and as much more is now due. The place is worth about $500. In the summer of 1897 he raised fair crops on the farm and several hogs, and in January, 1898, had a considerable quantity of household provisions on hand, with two shoats, poultry, a horse, wagon and harness, and farming tools, and owed nothing except what was due on the bond. He has six young children. The family lived in filth; the children were insufficiently clothed; and Hull was incapable of supporting them without assistance from the town. In November, 1897, and again in January, 1898, the selectmen of Wallingford notified those of Farmington to remove the family to the latter town. About the same time, upon an application by the Connecticut Humane Society, five of the children were committed to the county home, but two of them were soon sent thence to the Farmington almshouse, as being unfit inmates of the home. The Farmington selectmen now furnished Mr. and Mrs. Hull, at their request, the means of transportation to Massachusetts, where her father was said to live and they declared they could maintain their family. They went there, taking with them part of their goods and provisions, and selling the rest. In a fortnight the family were back in Wallingford, whose selectmen again demanded their removal to Farmington. Thereupon the selectmen of Farmington, without any written process, forcibly removed Mr. and Mrs. Hull to the Farmington almshouse. At this time they were in a destitute condition, with nothing in the house to eat, and scarcely any furniture; and were paupers belonging to Farmington; and it was necessary, to secure the proper care and support of their minor children, to remove them to the Farmington almshouse.

*Charles S. Hamilton* and *Charles A. Harrison,* for the appellant (petitioner).

*Oswin H. D. Fowler* and *Noble E. Pierce,* for the appellees (respondents).

BALDWIN, J.   The finding of the Superior Court that Mr. and Mrs. Hull were paupers and had a settlement in the town of Farmington, at the time of their removal to its almshouse, is conclusive, unless it be inconsistent with the facts specially set forth upon the record.

There is no such inconsistency.   His birth gave him a settlement in Farmington.   This relation to that town he could not vary while a minor, and did not after coming of age. *Sterling* v. *Plainfield*, 4 Conn. 114.   His marriage (it not appearing that either party was then, or during the year previous had been, a pauper) communicated the same settlement to his wife.   General Statutes, § 3290.   His interest in the Wallingford farm was worth no more than the amount of the purchase money remaining due; and the personal property which had been upon it had disappeared before his removal. Both he and his wife were in a destitute condition, when the selectmen took them into their keeping, and had shown themselves incapable of giving their children a decent support; nor had they any estate sufficient for that purpose within the meaning of our poor laws.   *Fish* v. *Perkins*, 52 Conn. 200.

The obligation of a town to support its paupers did not give it, at common law, power to control their personal liberty by confining them to a particular place of residence. *Backus* v. *Dudley*, 3 Conn. 568.   It is obvious that such a power might greatly lessen the burden of their support.   Soon after the controversy which gave rise to the case just cited, two laws were passed to extend the authority of towns in this respect.   One, which first appears in the Revision of 1821 (p. 370, § 4), is substantially preserved in General Statutes, § 3303, which provides that "paupers shall be liable to be removed to such places as the selectmen may lawfully designate, to be supported as the town or selectmen may direct, and shall be subject to the orders of the selectmen." The other (Acts of 1820, p. 425; Rev. of 1821, p. 281, § 5) enabled the selectmen of any town to procure the removal thither of any of its paupers who might be found in want in another town, by a constable of their own town under a war-

rant from two of its civil authority. In 1875 this statute was repealed, and a similar authority given to the selectmen of the town in which the pauper was found; the warrant being issued by one of its justices of the peace, and directed to one of its constables; but to be applied for by the selectmen only "after giving notice to the town to which said pauper belongs, to remove him and his family, and a failure of such town to make such removal." Public Acts of 1875, p. 54, § 6. Substantially the same provisions appear in General Statutes, § 3293.

The selectmen of Wallingford gave due notice to those of Farmington to take the Hull family away. It was only in case of the failure of the Farmington selectmen to comply with this demand by removing the paupers, that they could be deported at the instance of the Wallingford selectmen. There is a reason for procuring a magistrate's warrant to be executed by a constable, where a pauper is to be returned to a town unwilling to receive him, which does not exist when the town where he belongs is the moving party. General Statutes, § 3294. This was presumably the cause of the change of procedure made in 1875. Under that, the town of the pauper's settlement was first to be asked to undertake his removal; and the accompanying repeal of the right of its authorities to accomplish it by legal process, indicated that other provisions of law were deemed to dispense with the necessity of a warrant. General Statutes, § 3293, must be construed in connection with § 3303. So read, they gave the selectmen of Farmington power to remove the paupers without resort to any legal process, and having removed them to keep them at the almshouse against their will so long as they continue in such a condition as to be a public charge.

Selectmen are not necessarily confined in the exercise of their powers to the limits of the town by which they are elected to their office. They are in many respects the agents of the law, and there is no reason why a statute in conferring authority upon them to perform an act, may not, as in this case, enable them to perform it wherever public necessity and convenience require.

No constitutional right was violated by the proceedings in controversy. Town paupers belong to à dependent class. The law assigns them a certain *status*. This entitles them to public aid, and subjects them, in a corresponding degree, to public control. There is nothing in the statutes under which the defendants justify which pushes this right of control further than is reasonably adapted to keeping the public burdens within due bounds. *McCarthy* v. *Hinman*, 35 Conn. 538. Economy in the administration of relief to the town poor may require their concentration under one roof. The General Assembly had the right to authorize this, and to commit the question of adopting that policy in each particular town to the decision of its local authorities. Nor was it necessary to provide for the issue of any legal process for taking to the almshouse paupers in need of support and unwilling to go there, whether found in the same town or in any other within the limits of the State. The statute, of itself, is a sufficient warrant.

The finding shows that the selectmen of Farmington have offered the Hulls the use of a farm in that town, and such aid as will enable the family to live upon it, if they will consent to remove there. There is nothing in the record to indicate that the authority of the selectmen has been unnecessarily exercised, or the restraint of the paupers unduly prolonged.

There is no error.

In this opinion the other judges concurred.