THE TOWN OF ROXBURY *vs*. THE TOWN OF BRIDGE-
WATER.

First Judicial District, Hartford, January Term, 1912.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

An unmarried farm laborer having a settlement in *B*, who left *B*, went to *R*, and then during six years went from one town to the other as he found employment, carrying with him his personal belongings, and intending to make his home and domicil wherever he worked, does not thereby acquire a settlement in *R*, although he was employed and resided in *R* the greater part of the time, and had a few articles stored there during all the time, and although, when out of work, it was his habit to return to his last place of employment in *R*.

The running of the four years required to gain a settlement by com-

morancy is stopped by a change of domicil to another town, though the change is only for a brief time, and the person then returns to the former domicil.

When one actually abides in a place, his intention as to making it his permanent home is the controlling factor in determining the question of domicil.

When the question is whether one in making a change of residence also changed his legal domicil, evidence is admissible of his declaration, while going from one place to the other, that he was leaving the former place for good.

The settlement of a wife, and that of a child born in lawful wedlock, follows that of the husband and father.

When a celebration of a marriage is proved, the law raises a presumption in favor of its validity, which will support it until its invalidity is proved. It will not be held invalid upon proof of a former marriage of the wife, that there has been no divorce, and that the whereabouts of the former husband, and whether he is now living or dead, is unknown.

Section 2485 of the General Statutes, as amended by chapter 40 of the Public Acts of 1903, requires the selectmen of a town who find a resident of that town, who is a settled inhabitant of another town, poor and unable to support himself, to furnish such support, and to notify the town to which he belongs "of his condition." *Held* that the condition to be reported is that of being needy and receiving public support. The statute does not demand that notice be given as to the extent or quality of the support required, as, for instance, that he is ill and in need of medical aid.

Argued January 2d—decided February 9th, 1912.

ACTION to recover expenses incurred in the necessary support of a pauper, his wife and children, who were alleged to have a legal settlement in the defendant town, brought to and tried by the Court of Common Pleas in Litchfield County, *Welch, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

May 1st, 1894, Oliver Wilmot had his legal settlement in the town of Bridgewater, where he had resided continuously during the preceding six years and more, supporting himself and making that town his home. During the last four years and more of this time, he had kept house. Within a week or ten days after said

date, he removed with all his household and other personal effects into Roxbury. All of these effects, save his clothing, which he carried upon his person and in a trunk, and two comfortables and a pillow, he stored in an unoccupied building in Roxbury. These have ever since remained in storage, except such of them as have been sold or otherwise disposed of, as the larger portion has been.

Wilmot was a man of feeble mind, and an ordinary farm laborer. Upon his going to Roxbury, he was employed by one Tyrrel as a farm hand. He worked for Tyrrel at different times and for broken periods for nearly four years. During this period, he was at times employed by other persons, including, upon several occasions, persons residing in Bridgewater, whither he went to work and live, and generally attended with his trunk and personal belongings, not in storage as recited. He left Tyrrel's employment finally and permanently in March, 1898, and went directly to work for a farmer in Bridgewater. He took his trunk and pillow with him, the two comfortables having been disposed of. From this time until November, 1900, he worked at various places in both towns. His major employments, however, were in Roxbury, and when he completed his briefer terms of employment in Bridgewater he returned to the last place where he had worked in Roxbury, and remained there until he was next employed. During all this period following May 1st, 1894, he boarded and made his home where he worked. He carried with him, as he went from place to place, his trunk and contents, and, until it disappears from the record, his pillow, and his intention was to make his home and domicil wherever he worked.

He remained unmarried until November 3d, 1900, when he married a woman whose maiden name was Julia Oviatt. The marriage took place in Bridgewater,

but Julia had never resided in that town. She was born in New Milford, where her residence remained until she was married, in September, 1893, to one George Norman, then of Bridgeport. Norman shortly disappeared, and he has not been heard from since about April, 1895. Julia and Norman have never been divorced, and no evidence was offered showing that Norman had died. A child, Elsie, was born to them January 3d, 1896. This child has lived with Wilmot and Julia since their marriage. Since their marriage, Wilmot and Julia have lived together in Roxbury and New Milford for brief alternating periods. It is not claimed that any settlement has been gained by such residence. A child, named Merton, was born to them in Roxbury December 21st, 1903.

December 1st, 1903, Wilmot, by reason of personal injuries received, became sick and unable to support himself and family, which consisted of himself, his wife, Julia, and the two children, Elsie and Merton, and he was in need of medical aid, and the selectmen of Roxbury, where he then was, furnished him and his family necessary assistance, including necessary medical aid. Statutory notice was seasonably given to the defendant, but nothing was said therein to the effect that Wilmot was in need of medical aid, or that such aid had been furnished him.

The court rendered judgment for the support and medical aid furnished to Wilmot and for the support furnished to Julia and the child Merton. Nothing was allowed for the support furnished the child Elsie. No complaint is made of the method of computation used to arrive at these amounts, or that an amount was allowed in excess of the limitations of the statute.

*Samuel A. Herman* and *John F. Addis*, for the appellant (defendant).

*Donald T. Warner* and *Howard F. Landon,* for the appellee (plaintiff).

PRENTICE, J.  The fundamental question in this case relates to the legal settlement, during the period from December 6th, 1903, to September 6th, 1905, of Oliver Wilmot.  May 1st, 1894, finds him with such settlement in the defendant town, where he was then domiciled.  Within a week or ten days thereafter, he found employment in the plaintiff town, and removed thither.  His settlement in Bridgewater, however, remained until another was gained elsewhere.  If he at any time gained another, he must have done so between May 1st, 1894, and November 3d, 1900, and the one gained must have been in Roxbury.  This much the finding establishes beyond question.

Wilmot was a man of feeble intellect, and a farm laborer.  During the period last referred to, he was unmarried, and his life a roving one, which carried him, accompanied by a trunk or bundle holding his clothing, and at times a solitary pillow in addition, from place to place, where he obtained employment.  During the major portion of this time, his bodily presence was in Roxbury.  There was, however, no continuous period of four years during which this was the case, or during which he was not employed in Bridgewater and boarding there with his employer, with the customary accompaniment of his trunk or bundle and pillow.  The record which the finding contains of his various places of employment, first in one of these towns and then in the other, when taken in connection with the intention, which, as the court has explicitly found, he entertained to make his home and domicil wherever he worked, is conclusive of the correctness of the ultimate conclusion of the court, that Wilmot, although he changed his domicil from time to time, never gained a new legal

settlement after he left Bridgewater in May, 1894. A change of domicil interrupts the running of the statutory period required for the acquisition of settlement. *Salem* v. *Lyme*, 29 Conn. 74, 80. Such change may be accomplished in a brief space of time. It may result from a short sojourn. It is only necessary, in any event, that there be sufficient time to accomplish the act of removal, if that act be attended with the requisite present intention. "A change of domicil is a question of 'act' and 'intention.'" Where there is an actual abiding in a place, the intention with which it is accompanied is the controlling factor in determining the question of domicil. *Madison* v. *Guilford*, 85 Conn. 55, 61, 81 Atl. 1046; *Yale* v. *West Middle School District*, 59 Conn. 489, 491, 22 Atl. 295. The finding as to Wilmot's acts and intention leaves no room for controversy.

After November 3d, 1900, Wilmot claimed one, whose maiden name was Julia Oviatt, as his wife, and lived with her as such. The assistance for which recovery was had went in part to her support, as also to that of a child born to them. Julia has never resided in Bridgewater, and if she has a settlement in that town it can have been acquired only through her lawful marriage to Wilmot. The plaintiff, to establish this marriage relation, presented in evidence a certified copy from the public records of Bridgewater of the license for and certificate of marriage between the two persons, the certificate stating that the marriage was performed November 3d, 1900. The defendant, on its behalf, showed that Julia was married to one George Norman on September 9th, 1893, and that there had never been a divorce. There was no direct evidence to show that Norman was dead, but his whereabouts, if living, have been unknown since the early months of 1895, and he has not been heard from since that

time. The defendant claims that upon this state of facts the court erred in finding that Julia acquired the settlement of Wilmot by the act of marriage in November, 1900.

We are not under the necessity of discussing the question which this contention presents. Differing views upon it have been expressed; but in *Erwin* v. *English*, 61 Conn. 502, 510, 23 Atl. 753, we had occasion to pass upon it. We then held that, the second marriage having been proved, the law raises a presumption in favor of its validity, which will suffice to support it until its invalidity is proved; and that this presumption will not be overthrown by proof of a prior marriage, unattended with proof that there has been no divorce, and that the partner in that marriage is still alive.

The trial court was therefore not in error in holding that the settlement of Julia followed that of Wilmot, as her husband, and was in Bridgewater. *Harrison* v. *Gilbert*, 71 Conn. 724, 727, 43 Atl. 190. That of the child Merton, since it was born in lawful wedlock, was, of course, that of its father. *Oxford* v. *Bethany*, 19 Conn. 229, 231.

The reasons of appeal charge that the court erred in including in its judgment certain sums expended by the plaintiff for medical services and attendance, for the reason that the notices given to the defendant under the statute (General Statutes, § 2485, as amended by Public Acts of 1903, p. 28, chapter 40) failed to state that any such services had been performed or were required, or such attendance had or needed. The statute prescribes that notice of "the condition" of the pauper be given. The "condition" referred to is that of needing and receiving public support. The statute does not demand that information be given as to the extent or quality of the support which the necessities of the pauper require, but information that

his condition is that of one who is in receipt of public aid, as being poor and unable to support himself. The notices in question were not inadequate to the end, and for the reasons indicated.

Upon the trial the plaintiff produced a witness who testified that upon one occasion in the latter part of March, 1898, she met Wilmot, in Roxbury, riding in a wagon with his trunk, and headed in the direction of Bridgewater, and had a conversation with him. Upon objection, she was permitted to state this conversation, in which Wilmot said that he was going to leave Roxbury for good. This testimony was clearly admissible, for the reason, if for no other, that it bore directly upon the important question of intent. *Madison* v. *Guilford*, 85 Conn. 55, 65, 81 Atl. 1046.

Another ruling upon the admission of testimony complained of was too manifestly correct to justify attention.

There is no error.

In this opinion the other judges concurred.