TOWN OF WINCHESTER *v.* TOWN OF BURLINGTON.

MALTBIE, C. J., AVERY, BROWN and JENNINGS, JS.[1]

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued June 3—decided July 15, 1941.

*S. Russell Mink,* with whom, on the brief, was *Frederick W. Beach,* for the appellant (defendant).

*Lester W. Schaefer* and *Jonathan F. Ells,* for the appellee (plaintiff).

MALTBIE, C. J. The plaintiff brought this action to recover from the defendant expenses incurred for the support of Mrs. Georgiana Reynolds and her children,

under the provisions of General Statutes, Cum. Sup. 1935, § 663c, quoted, so far as material in this case, to the footnote,[1] on the ground that their settlement was in the defendant town. The defendant conceded that until August 26, 1928, the Reynolds family did have a settlement in it, but it claimed that thereafter they acquired a settlement in the town of Colebrook; also that the facts did not bring the family within the class of persons for the support of which another town than that in which they actually lived was liable; and that the notice given to it did not meet the requirements of the statute. The court overruled these claims and gave judgment for the plaintiff, from which the defendant has appealed.

On August 26, 1928, Mrs. Reynolds' husband, with his family, moved to the town of Colebrook to take a position as resident manager of a farm there. From that time until September, 1936, they continued to live in Colebrook on the farm except for two intervals, one of five months and one of about a year, when the husband lost his position as resident manager of the farm and the family moved to Winsted in the plaintiff town and lived there. After September, 1936,

[1] Sec. 663c. Support of nonresident paupers; notice. When a person not an inhabitant of the town in which he resides shall become poor and unable to support himself, the selectmen of such town shall furnish him with necessary support as soon as his condition shall come to their knowledge, and each selectman neglecting such duty shall be fined seven dollars. The selectmen of each town to which a pauper belonging to another town is chargeable shall give notice of his condition to the town to which such pauper belongs, within fifteen days after they shall know to what town he belongs, and a letter deposited in the postoffice, postage paid, stating the name of the pauper, and that he is chargeable, signed by a selectman of the town where he resides, directed to the selectmen of the town where he belongs, shall be sufficient evidence that notice was given at the time that such letter would, in the usual course of the mail, reach the selectmen to whom it was directed; and actual notice in writing, sent in any other mode, shall be sufficient; . . .

the family again lived in Winsted and then returned to another farm in Colebrook, where they resided some three months. In April, 1937, the family moved once more to Winsted and thereafter did not return to Colebrook. Between the first removal to Colebrook and the time when the family left that town, they did not live there continuously for any period of four years. The claim of the defendant is, however, that the removals to Winsted did not interrupt the continuity of the residence in Colebrook. The trial court has found that during each of the periods that the family resided in Winsted, Reynolds intended to make that his place of permanent residence, with no intention of moving or residing elsewhere but ready to take a job wherever he could get one. The defendant sought to strike out this finding and to have inserted in place of it one that, when Reynolds left Colebrook he intended to reside away from that town only temporarily and until he secured farm work or a residence in Colebrook. The most favorable construction in support of the claim of the defendant that can be given to the evidence, is that Reynolds did not intend to reside permanently in Winsted if he could find work on a farm in some other place, and that he always hoped to be re-employed by the owner of the farm in Colebrook where he had been resident manager.

Reynolds, in order to have acquired a settlement in Colebrook, must have "resided . . . four years continuously" in that town. General Statutes, Cum. Sup. 1935, § 662c; Cum. Sup. 1939, § 558e. The word "resided" as used in this statute requires that one must have had a " 'fixed, permanent, established residence or home,' " an "actual and not merely constructive residence"; that the person in question must have been an actual resident, " 'even though he have a technical domicil elsewhere' "; *Washington* v. *Warren*, 123

Conn. 268, 271, 273, 193 Atl. 751; and the statute requires that this residence must have been continuous for the four-year period. *Chaplin* v. *Bloomfield,* 92 Conn. 395, 397, 103 Atl. 118. Its continuance would not be interrupted by temporary absences, so long as there was an intent to return to the town, and the pauper still regarded it as his home or permanent dwelling place. *Salem* v. *Lyme,* 29 Conn. 74, 80. There is in *Plainville* v. *Milford,* 119 Conn. 380, 390, 177 Atl. 138, language suggesting that absences will not break the continuity of the residence necessary to acquire a settlement unless they are accompanied by an intent to abandon the residence which has been begun, but a consideration of the requirement in the statute that residence must be continuous effectively shows that this cannot be so, and it is so held in *Fairfield* v. *Easton,* 73 Conn. 735, 739, 49 Atl. 200. Where one leaves the town in which he is living and it ceases to be in fact his permanent dwelling place or home, the continuity of the residence necessary to acquire a settlement is broken. *Newtown* v. *Southbury,* 100 Conn. 251, 253, 123 Atl. 278; *Washington* v. *Warren,* supra, 272. The trial court was not in error in holding that the Reynolds family had not acquired a settlement in the town of Colebrook.

The first sentence of the statute, under which this case is brought, provides that when a person not an inhabitant of the town in which he resides "shall become poor and unable to support himself," the selectmen of the town shall furnish him necessary support, while the second sentence provides that the selectmen of the town furnishing support to "a pauper belonging to another town" shall give notice of his condition to the town to which "such pauper" belongs. The defendant contends that the obligation of the town to which the person belongs to reimburse the town fur-

nishing the support is more restricted than the duty imposed upon the selectmen by the first sentence, to furnish support, because of the use of the word "pauper" in the second sentence.

In Professor Capen's book "Connecticut Poor Law," the early development of our statutes for the relief of the needy is traced in detail, and it suffices now to refer only to a few outstanding laws. In 1673 the General Court passed an act which provided that every town should maintain its own "poor," and this duty extended to any person remaining three months within the town who "comes to want relief" unless ordered to leave. Laws of 1673, p. 57. In 1789 it was provided that every town should support its own inhabitants "who may need relief" whether living in that town or any other and any town which had incurred expense in supporting an inhabitant of another might recover it in an action against the town to which he belonged. Laws of 1789, p. 386. In 1818 an act was passed which provided in the first section that whenever any person "shall become poor, and unable to support and provide for him, or herself at any town other than that to which he or she belongs, or in which such pauper, or paupers statedly reside," it was the duty of the person at whose house such "poor person" might be to notify one of the selectmen of the town and the town to which such "poor person" belonged would not be liable for any support furnished before the notice was given; and in the second section it was made the duty of the selectmen whenever a person not an inhabitant of a town should become "poor, and unable to support and provide for him, or herself," to furnish necessary support and give information to the town to which such person belonged. Public Acts, 1818, May session, Chap. 4. In the Revision of 1821 the provisions of the first section were omitted and the phraseology of

the second section amended to read that it should be the duty of the selectmen whenever a person not an inhabitant of the town but living therein should become "poor and unable to support him, or her self, to furnish such pauper" such support as might be necessary, and that the selectmen of the town in which "a pauper belonging to another town is chargeable," should give notice to the town to which "the pauper belongs" of his condition, with additional provisions as to the nature of the notice and the time when it is to be given. Statutes, 1821, p. 370. The law continued in this form until the Revision of 1875, when the language was changed substantially to that contained in our present statute. General Statutes, Rev. 1875, p. 199. The development of the statute makes it plain that the word "pauper" in the second sentence has the same meaning as the phrase in the first sentence referring to one who becomes "poor and unable to support himself."

The trial court has found that Mrs. Reynolds owned an undivided one-twelfth interest in a farm occupied by her mother which, while the plaintiff town was furnishing support, was conveyed by Mrs. Reynolds to her mother without consideration; but it has also found, with sufficient support in the evidence, that this interest had, as a practical matter, no market value and for the purposes of support was valueless to Mrs. Reynolds. The mere ownership of property by a poor person does not free a town from obligation to furnish support unless that property has some substantial value which could reasonably have been appropriated and made to contribute to his support. *Wallingford* v. *Southington,* 16 Conn. 431, 436; and see *Koniak* v. *Koniak,* 123 Conn. 338, 342, 195 Atl. 189. The trial court could reasonably conclude that the ownership of this interest in real property did not

prevent the Reynolds family from being eligible to receive support from the town as poor persons under the statute in question. *Fish* v. *Perkins,* 52 Conn. 200, 203; *Harrison* v. *Gilbert,* 71 Conn. 724, 727, 43 Atl. 190; *Old Saybrook* v. *Milford,* 76 Conn. 152, 155, 56 Atl. 496; *Madison* v. *Guilford,* 85 Conn. 55, 63, 81 Atl. 1046. In *Peters* v. *Litchfield,* 34 Conn. 264, and the cases cited in it, the property, ownership of which was held to prevent one from being a pauper, was apparently such that it could be made available for his support.

The trial court has also found that during the period when the family were receiving support, Mrs. Reynolds' mother owned a house and lot, without incumbrance, having a value of $3500, and Reynolds' father owned unincumbered real estate having a value of at least $3000. The defendant contends that the Reynolds family were not entitled to support as poor persons because they did not come under the provisions of the statute which requires every town to support such persons belonging to it as "have not estate sufficient for their support, and have no relations of sufficient ability who are obliged by law to support them. . . ." General Statutes, § 1693. We assume for the purpose of deciding this case that §663c is no broader in imposing an obligation of support than is this statute. The obligation of relatives to furnish support is found in § 1717 of the General Statutes as amended by § 669c of the Cumulative Supplement of 1935 and § 563e of the Cumulative Supplement of 1939. As far as material to the issues before us, it provides that when any person shall become poor and unable to support himself or herself and family and shall have certain relatives, including a father and mother, grandfather or grandmother, who are "able to provide such support," it shall be provided by them,

and that if they "shall neglect to provide it," then an action may be brought in which the court may order them to contribute to the support of the poor persons from the time of serving the complaint. Before the court can order relatives to furnish support, it must find that they are " 'able to provide' " it and have neglected to do so. *Tulin* v. *Tulin*, 124 Conn. 518, 522, 200 Atl. 819. The mere ownership of the property in question by Mrs. Reynolds' mother and Mr. Reynolds' father would not necessarily show that they were able to provide support for the Reynolds family; the real estate might be such that no money could be presently produced from it or the owners might be in such a position that its continued possession and ownership were necessary and only sufficient for their own support and that of their immediate families. The trial court has not found, and we are not asked to correct the finding to show, that the persons in question were "able to provide" for the Reynolds family, and in the absence of such a finding we cannot hold from the mere ownership of the property that they were as matter of law.

Nor can we construe the words in § 1693 of the statutes "obliged by law to support," as meaning that a town in which there are poor persons belonging to another town must, in furnishing them necessary support, take the risk that there are relatives unknown to them but who may later be found of sufficient means to furnish support. The word "neglect" in § 1717 of the statutes "imports something more than a mere omission—something more than a failure without fault. It imports an omission accompanied by some kind of culpability in the conduct of the party." *Lathrop* v. *Lathrop*, 78 Conn. 650, 652, 63 Atl. 514. The duty of support referred to in the statute is an imperfect obligation unless it can be made effective by

action in court, and the words in § 1693 referring to relations "obliged by law" to support poor persons must mean persons who can be compelled by legal process to support them. There is, in the facts found, nothing to suggest that Mrs. Reynolds' mother or Mr. Reynolds' father had "neglected" to provide support as that word is used in § 1717. The fact that they owned property would not take the Reynolds family out of the purview of the obligation of the plaintiff town to furnish them support.

The final claim of the defendant is that the notice given to its selectmen did not comply with the requirements of the statute. The only provision the statute contains with reference to the nature of the notice is that it shall state "the condition" of the poor person. " 'The condition' referred to is that of needing and receiving public support. The statute does not demand that information be given as to the extent or quality of the support which the necessities of the pauper require, but information that his condition is that of one who is in receipt of public aid, as being poor and unable to support himself." *Roxbury* v. *Bridgewater*, 85 Conn. 196, 202, 82 Atl. 193. The notice in question was in the form of a letter. It gave the names of all members of the Reynolds family, with the date and place of birth; it stated that they have been "accepted for aid" in the plaintiff town; that "we understand" Reynolds is unable to contribute to the support of the family, there is no income in the group and Mrs. Reynolds is unable to work; it detailed the various places and dates where the family had lived since leaving the defendant town and stated that the family had not acquired a settlement in any other town; it closed with the request: "May we have your acceptance of this case?" Slightly paraphrased, our opinion in *Bethlehem* v. *Watertown*, 51 Conn. 490, 492, aptly states the

situation: "Nothing technical is required in notices of this kind. They should be interpreted as plain practical men understand them. The words ['accepted for aid'] taken in their connection, having regard to the subject matter and the official position of the parties sending and receiving them, fairly import that the persons named were paupers, that they were then residing in the town of [Winchester], that they were chargeable to the town [of Burlington], and that the town was incurring expense in their support; and that is all that the statute requires." See *Windham* v. *Lebanon*, 51 Conn. 319, 320; *Wile* v. *Southbury*, 43 Conn. 53, 54.

There is no error.

In this opinion the other judges concurred.