FRANK RIZZO, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLEE, v. JAMES G. ALATSAS AND MARTIN SIEGEL, JOINTLY AND SEVERALLY, DEFENDANTS-APPELLANTS.

Argued May 20, 1958—Decided June 25, 1958.

Mr. *Howard G. Kulp, Jr.,* argued the cause for plaintiff-appellee (*Messrs. Brown, Connery, Kulp & Wille,* attorneys).

Mr. *Hymen B. Mintz* argued the cause for defendants-appellants (*Mr. Sol Herships,* attorney).

The opinion of the court was delivered by

FRANCIS, J. Plaintiff obtained a judgment in the amount of $3,432.75, plus costs of $80.15, against Meridian Development Corporation, a New Jersey corporation, arising out of a corporate obligation. This suit was then brought on the judgment against James G. Alatsas and Martin Siegel, president and secretary of Meridian, in their individual capacities. On motion, summary judgment was granted against them. Their subsequent appeal was certified by us before consideration by the Appellate Division.

A mere outline of the case demonstrates its unusual nature. Ordinarily, we do not think in terms of the possibility of individual liability of corporate officers for obligations incurred by the entity in the usual course of business. Such personal liability is inconsistent with the existence of a body corporate at common law and can emanate only from some positive legislative fiat. *Salt Lake City National Bank v. Hendrickson,* 40 *N. J. L.* 52, 55 (*Sup. Ct.* 1878). The alleged cause of action arises out of *N. J. S. A.* 14:8–16, under circumstances to be detailed. The statute provides:

"Upon payment of each installment of capital stock, and of every increase thereof, the president or a vice-president and the secretary or treasurer shall make a certificate stating the amount of the capital so paid and whether paid in cash or by the purchase of property. This certificate shall be signed and sworn to by the president or such vice-president and the secretary or treasurer,

and shall be filed in the office of the Secretary of State, within 10 days after such payment.

*"If any of such officers neglect or refuse so to do for* 30 *days after written request so to do by a creditor or stockholder of the corporation, they shall be jointly and severally liable for all its debts contracted before the filing of such certificate."* (Emphasis added)

No certificate had been filed in the present case prior to the entry of judgment against the corporation. Thereafter, plaintiff's attorneys sent by certified mail to Alatsas and Siegel the following notice dated August 8, 1957:

"Demand is hereby made on behalf of Frank Rizzo, Inc., that you file, within 30 days from the receipt of this letter a certificate in the office of the Secretary of State, stating the total amount of capital paid into the Meridian Development Corporation and whether it was paid in cash or by the purchase of property.

Very truly yours,
Brown, Connery, Kulp & Wille
Attorneys for Frank Rizzo, Inc.
By: Howard G. Kulp, Jr.,
A Member of the Firm."

The notices were addressed to Alatsas at the office of the corporation in Newark, and to Siegel at his home in West Orange, New Jersey.

In passing, we observe that the statute does not prescribe the method of service. It merely speaks of the duty to file the certificate "after written request so to do." But where one condition precedent to liability is the making of such a written request, obviously the proof must establish either personal receipt of the notice or adequate and timely knowledge thereof. Plaintiff claims service on Alatsas on August 9, and on Siegel on August 15, 1957. The required certificate, although signed by both of them on August 20, was not filed in the office of the Secretary of State until September 26, 1957—well beyond the allotted 30-day period. The tardiness formed the basis for the motion for summary judgment.

In explanation of the late filing, defendants submitted an affidavit of one Borsella, office manager of Meridian, who deposed that he had obtained the necessary certificate form

from the Secretary of State on behalf of the defendants. He completed it except that *"we* were not certain of the amount of capital stock, so that the figure relating thereto, was inserted in pencil." Alatsas and Siegel executed it in that tentative form on August 20 and instructed him to obtain verification from the corporate accountant and then to file the certificate with the Secretary of State. Borsella encountered difficulty in obtaining the expeditious attention of the accountant to the matter, and in the early part of September (the answer to the complaint says "on or about September 5") he telephoned plaintiff's attorney, inquiring as to what information was actually wanted. His affidavit says that he was told to do "just what the letter said." Thereupon, he tried to reach the accountant and, being unsuccessful, left a request for him to make an early appearance at defendants' office. Borsella again called plaintiff's attorney on the same day, advised him of the difficulty, assured him that the certificate would be filed and "indicated to him, that we might need another week or so," to which the attorney replied "all right."

The affidavit of counsel denies that he received a telephone call on behalf of defendants "on or about September 5, 1957" and that he ever acquiesced in an extension of time. At the oral argument in this court, it was conceded that two telephone calls were received on September 12 and that they concerned the filing of the certificate in question.

The Borsella affidavit continues to the effect that when the accountant confirmed the pencilled figure, the document was completed and on September 20, 1957 was forwarded to the Secretary of State with a check for $1 which the accountant had said was the required fee. This turned out to be error because the fee was $2. As a result, the certificate was returned and, when sent back with the proper fee, it was filed on September 26, 1957.

On these facts the trial court entered summary judgment for the plaintiff. He took the view that the failure to file within time constituted "neglect" within the contemplation of the act. He held also that the attorney had no authority

to waive plaintiff's right to strict compliance with the "written request."

Review of the propriety of a summary judgment must be engaged in with an eye to a fundamental concept. Such judgment is proper only where the record shows palpably that there is no issue as to any material fact in the case. *R. R.* 4:58–3. The papers supporting the motion are to be closely scrutinized; those opposed to it indulgently treated. Doubts must be resolved in favor of the conventional trial. The matter cannot be decided on the affidavits of the parties where inferences for and against the existence of a cause of action or a defense arise therefrom, no matter how strongly they point in one direction or the other. Affidavits are of value only when they demonstrate the absence of a factual dispute as to all elements of the cause of action or the defense. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67, 76 (1954); *West Side Trust Co. v. Gascoigne,* 39 *N. J. Super.* 467, 470, 471 (*App. Div.* 1956); *Mayflower Industries v. Thor Corp.,* 15 *N. J. Super.* 139, 155 (*Ch. Div.* 1951), affirmed 9 *N. J.* 605 (1952).

In the instant case the barrier in plaintiff's path is even more formidable. The statute involved in effect imposes a penalty. It is sufficiently penal in character to require a strict construction and thus to impose its burden only when there has been a manifest non-compliance. *Huntington v. Attrill,* 146 *U. S.* 657, 676, 13 *S. Ct.* 224, 36 *L. Ed.* 1123 (1892); *Derrickson v. Smith,* 27 *N. J. L.* 166, 170 (*Sup. Ct.* 1858); *Macbeth Evans Glass Co. v. Gumbinsky,* 201 *Mich.* 18, 166 *N. W.* 936 (*Sup. Ct.* 1918); 3 *Fletcher, Cyclopedia Corporations* (1947), §§ 1204, 1208, 1211. The critical words by which liability is to be gauged are "neglect or refuse." In the context and weighted with the rule of strict construction, "neglect" signifies more than mere failure or omission. It connotes a willful failure to discharge, or a reckless indifference to, a known obligation. *Cf. Benjamin v. Laffray,* 79 *N. J. L.* 310 (*Sup. Ct.* 1910); *Macbeth Evans Glass Co. v. Gumbinsky, supra; In re Drugcraft Co.,* 288 *F.* 206 (*D. C. Mich.* 1923).

In *Macbeth Evans Glass Co. v. Gumbinsky, supra* [201 *Mich.* 18, 166 *N. W.* 936] a Michigan statute, *Pub. Acts* 1907, *No.* 137, required the filing of an annual corporation report with the Secretary of State, and provided that any director in default, "who has neglected or refused to join in the making of such report, shall be liable for all the debts of such corporation contracted since the filing of the last report." The act further said that "neglect or refusal to file the report * * * shall be deemed willful when such report * * * is not filed * * * within the time herein limited."

The plaintiff produced a certificate from the Secretary of State to the effect that his records did not reveal any report for the year in question. In refutation, two officers of the company testified that they remembered signing such a report after it had been filled out. One of them asserted that within the time limited by the statute he had secured the signatures of the majority of the directors thereon and had given it to the mailing clerk to be dispatched to the Secretary of State. The clerk recalled the report being made out. She enclosed with it the filing fee of 50 cents. However, she could not remember specifically dropping it in the mail, saying, "If they were given to me to mail, I mailed them." She stated definitely that the document was returned to her twice for some correction. After refreshing her recollection from a letter she had written, she said also that she must have told the president of the company that she was sure the report had been mailed. Some correspondence in the office of the Secretary of State lent support for her statement that the document had been returned twice for correction.

The good faith effort on the part of the defendants was considered sufficient to overcome any presumption of willful neglect and to relieve them of any individual liability for the corporate debt. For compatible interpretations of similar phrases in other penal types of statutes, see *H. Hackfeld & Co. v. United States,* 197 *U. S.* 442, 25 *S. Ct.* 456, 49 *L. Ed.* 826 (1905); *In re Masters,* 165 *Ohio St.* 503,

137 *N. E. 2d* 752 (*Sup. Ct.* 1956); *Town of Winchester v. Town of Burlington,* 128 *Conn.* 185, 21 *A. 2d* 371 (*Sup. Ct. Err.* 1941); *Town of Milton v. Bruso,* 111 *Vt.* 82, 10 *A. 2d* 203 (*Sup. Ct.* 1940); *Reinhard v. Lawrence Warehouse Co.,* 41 *Cal. App. 2d* 741, 107 *P. 2d* 501 (*Dist. Ct. App.* 1940).

█ Tested by the considerations to which reference has been made, obviously it cannot be said as a matter of law that defendants were guilty of a neglect or refusal to file the certificate. The facts present such ample inferences to the contrary that a conclusion of error in granting summary judgment is inescapable.

█ It is not necessary to decide the question of plaintiff's attorney's authority, actual or apparent, to extend the time within which defendants were required to act. We leave that matter for full factual development at the plenary trial. Suffice it to say now that even if such authority was not present, the consent to an extension (if, in fact, there was one) in the factual setting and the reliance thereon by defendants would be a circumstance having probative force on the basic issue of whether there was neglect or refusal to file the certificate.

Defendants argued also that the proof of service upon them or of actual knowledge of the personal nature of the demand for the certificate was not adequate to justify summary judgment. Although the proofs present a strong inference of such service or knowledge, further exploration of the matter may be engaged in at the trial.

The judgment is reversed and the action is remanded for trial.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, FRANCIS and PROCTOR—6.

*For affirmance*—None.